604 So.2d 1036 (1992)
STATE of Louisiana
v.
Tyskie Tyrone ROSS.
No. KA 91 0963.
Court of Appeal of Louisiana, First Circuit.
June 29, 1992.
*1038 Mark Rhodes, Asst. Dist. Atty., Houma, for plaintiff and appellee, State.
William H. Dunchelman, Office of the Indigent Defenders, Houma, for defendant and appellant, Tyskie T. Ross.
Before WATKINS, CARTER and FOIL, JJ.
FOIL, Judge.
Tyskie Tyrone Ross was indicted for first degree murder, a violation of La.R.S. 14:30(A)(1). He pled not guilty and, after trial by jury, was convicted as charged. Following the conviction, the trial court denied defendant's motion for new trial and motion for post verdict judgment of acquittal. The court sentenced defendant to serve a term of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. Defendant has appealed, urging ten assignments of error:
1. The trial court erred in denying defendant's motion to suppress the confessions of defendant and/or Bobby Williams.
2. The trial court erred in denying defendant's objection to the prosecutor's improper recitation of law during the voir dire examination.
3. The trial court erred in denying defendant's challenge for cause of prospective juror, Lester Davis.
4. The trial court erred in denying defendant's objection to redirect testimony of Sue Ellen Burgess.
5. The trial court erred in denying defendant's objection to the prosecutor's closing statements which improperly recited the applicable law.
6. The trial court erred in refusing to grant defense requested jury charge.
7. The trial court erred in denying defendant's motion for new trial.
8. The trial court erred in denying defendant's motion for post verdict judgment of acquittal.
9. The verdict of the jury was contrary to the law and evidence.
10. The court erred in that the sentence imposed was excessive and improper; under the circumstances it amounted to cruel and unusual punishment.

FACTS
On March 23, 1989, Daniel Anderson was shot and killed by Bobby Williams during the course of an armed robbery. Prior to his murder, Mr. Anderson had been at the Fantasies Nightclub with his date, Sue Ellen Burgess. At approximately 11:45 p.m., the couple decided to leave the club. As they walked to Mr. Anderson's truck (which was parked nearby in front of the K-Mart Store), they noticed two men (defendant and Bobby Williams) following them. Mr. Anderson opened the passenger door and helped Ms. Burgess get into the truck. After he closed the door, one of the men pulled a gun on him. Mr. Anderson struggled with the man and shook the gun out of his hand. As they continued to fight and wrestle on the ground, Ms. Burgess saw the other man come over and pick up the gun. Frightened, Ms. Burgess ducked down in the truck. Seconds later, she heard two gunshots and heard the victim cry for help. Seeing that the two men had fled, Ms. Burgess ran nearby to get help for the victim. A surgeon, who was present in a nearby establishment, and emergency personnel attempted to resuscitate the victim, but he died from the gunshot wounds. He was shot twice, once on *1039 the left side at the base of his neck and once on the right side of his lower chest.
With the assistance of a tracking dog, deputies with the Terrebonne Parish Sheriff's Office were able to locate one of the suspects nearby, in the area behind the K-Mart. The suspect was identified as Bobby Williams. The deputies also found a .22 magnum revolver in the area where the suspect was initially stopped. Later testing by a ballistics expert determined that this gun was the murder weapon.
Acting upon an anonymous telephone call, detectives eventually focused their investigation on defendant as being the other suspect. After receiving information that law enforcement officers were looking for him, defendant contacted an assistant district attorney with whom he was familiar and came in for questioning. Although he initially denied involvement in the offense, he eventually admitted that he was the person who first pulled the gun on the victim and that Williams was the person who later fired the shots. He explained that he met with Williams earlier in the evening at a game room. Williams showed him the gun and stated that he was planning an armed robbery and wanted to "hurt somebody" and "physically shoot somebody." After the two men found that a girl they hoped to see (who lived in the area behind the K-Mart) was not at home, they decided to rob someone.

DENIAL OF MOTION TO SUPPRESS CONFESSION
In his first assignment of error, defendant claims the trial court erred when it denied his motion to suppress his confession. Defendant argues that the confession he gave to law enforcement officers was involuntary. Specifically, in brief, defendant maintains that the detectives coerced him into confessing by telling him that Bobby Williams and Melvin Scott were pointing the finger at him and by promising defendant that he would not receive the electric chair if he confessed.
For a confession or inculpatory statement to be admissible into evidence, the state must affirmatively show it was freely and voluntarily given without influence of fear, duress, intimidation, menace, or promises. La.R.S. 15:451. Once a defendant alleges specific instances of police misconduct in reference to the statement, it is incumbent upon the state to rebut specifically each such instance. State v. Petterway, 403 So.2d 1157, 1159 (La.1981). The admissibility of a confession is, in the first instance, a question for the trial court. The court's conclusions on the credibility and weight of testimony relating to the voluntariness of the confession for the purpose of admissibility will not be overturned on appeal unless they are not supported by the evidence. State v. Daughtery, 563 So.2d 1171, 1177 (La.App. 1st Cir.), writ denied, 569 So.2d 980 (La.1990).
After receiving notice that an anonymous caller identified defendant as the other suspect in the shooting, detectives with the Terrebonne Parish Sheriff's Office went to defendant's residence to question him. When they found that he was not in, they left a message with a neighbor for him to contact them. After learning that law enforcement officers were looking for him, on the Monday after the shooting, defendant contacted an assistant district attorney. On his own, defendant met with the assistant and then went to the Sheriff's Office for questioning.
Detectives Gary Williams and Calvin Johnson were in charge of defendant's questioning. When defendant reached the Sheriff's Office, the detectives advised him of his constitutional rights as per Miranda by using a printed form. Defendant indicated that he understood his rights. Initially, defendant denied any involvement in the shooting. However, he began crying after the detectives informed him that he was seen in the presence of Bobby Williams (who had already been arrested for the murder) and that a telephone caller identified defendant as a suspect. He told the detectives that he wanted to come in earlier but he did not because he thought the office would be closed on Sunday. The detectives gave defendant an opportunity to compose himself; then, some twenty minutes after defendant was advised of his *1040 rights, defendant confessed on tape to his involvement in the armed robbery and murder. The tape recording was introduced at defendant's trial.
The detectives testified that, during the entire time defendant was at their office, they did not force, threaten, or coerce him. They specifically denied threatening defendant with death in the electric chair and claimed the only mention of a possible penalty was by defendant, who expressed concern about spending his life in jail. The detectives stated that they made no offers of leniency to defendant or offer to speak to the assistant district attorney on defendant's behalf. The detectives further stated that they did not tell defendant that Bobby Williams pointed the finger at him.
Considering this testimony, we conclude the trial court correctly denied defendant's motion to suppress. In support of his argument, defendant claims his confession was involuntary because he initially denied involvement in the murder and did not confess until after he broke down and cried during the twenty-minute period between the time he was advised of his rights and the time he made a taped statement. However, emotional distress is not a ground for suppressing a confession unless it is so severe that the defendant cannot confess voluntarily. State v. English, 582 So.2d 1358, 1364 (La.App.2d Cir.), writ denied, 584 So.2d 1172 (La.1991). See State v. Williams, 383 So.2d 369, 371-72 (La. 1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 828 (1981). Furthermore, although defendant claims on appeal that he was induced and coerced during this time, defendant did not testify, either at the trial or at the hearing held on the motion to suppress. Thus, the record contains no evidence to support the factual allegations of inducement and coercion made by counsel on appeal.
The assignment of error is without merit.

PROSECUTOR'S RECITATION OF LAW DURING VOIR DIRE
In assignment of error number two, defendant contends the trial court committed reversible error when it overruled defendant's objection to the following statements made by the prosecutor during voir dire:
We are going to ask you to decide the guilt or innocence of a man. We do that on a routine basis up here. But we are also going to ask you to decide life or death on a human being.
Defendant argued that this recitation of the law was incorrect because the penalty would not be at issue if defendant were found not guilty.
We recognize that it is possible for someone unfamiliar with the law to interpret the prosecutor's remarks to imply that the sentencing segment of the trial would take place regardless of the verdict in the guilt phase of the trial. However, improper statements of the law during voir dire do not always require a reversal. State v. Kohler, 434 So.2d 1110, 1119 (La. App. 1st Cir.1983). Although defendant implies that neither the judge nor the prosecutor clarified the prosecutor's statements, the record reveals otherwise. Earlier in the proceedings, the trial court had instructed the jury that the sentencing phase of the trial would take place only if defendant were found guilty in the first phase of the trial. Furthermore, after defendant's objection, the prosecutor told the jury, "Obviously, the State of Louisiana is not going to ask you to decide the life or death of the Defendant if you find him not guilty." Thus, any confusion caused by the prosecutor's initial remarks does not constitute reversible error and the assignment of error is without merit.

DENIAL OF CHALLENGE FOR CAUSE
In assignment of error number three, defendant argues the trial court erred when it denied defendant's challenge for cause of a prospective juror whose responses to questions concerning the death penalty showed he was biased toward the state. Defendant contends the juror's responses revealed that the juror could not follow the law and evidence. The state argues the assignment of error is without merit because *1041 defendant did not exhaust his peremptory challenges.
In order to preserve for appeal the court's denial of a challenge for cause, the defendant is not required to exhaust his peremptory challenges. See La.C.Cr.P. art. 800 (as amended by 1983 La.Acts, No. 181, § 1); State v. Burge, 498 So.2d 196, 203 (La.App. 1st Cir.1986). See also State v. Vanderpool, 493 So.2d 574, 575 (La.1986); State v. Young, 569 So.2d 570, 584-85 n. 19 (La.App. 1st Cir.1990), writ denied, 575 So.2d 386 (La.1991). But see State v. Isgitt, 590 So.2d 763, 766-67 (La.App. 3d Cir.1991). In any event, in the instant case, the record reveals that defendant exhausted the twelve peremptory challenges provided by law (see La.C.Cr.P. art. 799) and the trial court did not allow any additional challenges.[1]
Article 797 of the Louisiana Code of Criminal Procedure provides several grounds for which a prospective juror may be challenged for cause, including the following:
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
* * * * * *
(4) The juror will not accept the law as given to him by the court; ...
The trial court is vested with broad discretion in ruling on a challenge for cause, and its ruling will not be disturbed on appeal absent a showing of abuse of discretion. State v. Ruffin, 572 So.2d 232, 235 (La.App. 1st Cir.1990), writ denied, 576 So.2d 26 (La.1991). A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably implied. State v. Martin, 558 So.2d 654, 658 (La.App. 1st Cir.), writ denied, 564 So.2d 318 (La.1990).
In response to a question by the court, prospective juror Lester Davis indicated he believed death should be the "only" penalty for first degree murder. When instructed that a juror would have to consider both penalties, life and death, Mr. Davis stated he could consider both possibilities but "personally" death would get his vote. When defense counsel later questioned Mr. Davis on this topic, Mr. Davis stated, "Well, like I said, if you're guilty of murder, my personal opinion is it's, you know, it's the death penalty." When defense counsel told him that the law requires a juror to consider certain factors before voting to impose the death penalty and then asked if his personal opinion would affect his decision, Mr. Davis responded, "I don't know. I can't tell you yes or no. I'm not that smart."
In Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), the United States Supreme Court clarified its decision in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and held that "the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment ... is whether the juror's views would `prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" 469 U.S. at 424, 105 S.Ct. at 852. See State v. Lindsey, 543 So.2d 886, 895-896 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990). It is well settled that a defendant on trial for his life is guaranteed the right to an impartial jury. Ross v. Oklahoma, 487 U.S. 81, 85, 108 S.Ct. 2273, 2277, 101 L.Ed.2d 80 (1988).
In the instant case, when the trial court denied defendant's challenge for cause of Mr. Davis, it stated that Mr. Davis indicated he was "not locked into one particular side of the issue, whether it be life imprisonment or death." However, the *1042 record does not support the trial court's determination. Mr. Davis repeatedly stated he felt the death penalty was the only appropriate penalty for murder and, when asked by the court whether or not he would be able to consider both penalties, Mr. Davis responded, "I can consider both. But personally that's [the death penalty is] my vote." Thus, it is obvious Mr. Davis's viewpoint on the death penalty was such that he would be unable to render judgment according to the law and the court erred when it denied defendant's challenge for cause of juror Davis.
However, the erroneous denial of a challenge for cause is not automatically reversible error. To defeat application of the harmless error rule, the defendant must establish that he was prejudiced by the court's ruling. Vanderpool, 493 So.2d at 575. See La.C.Cr.P. art. 921.
On appeal, defendant argues he was prejudiced because he was forced to use one of his peremptory challenges in order to remove Davis from the jury and that Davis's comments prejudiced the other members of the jury panel. We see absolutely no indication that any comment made by Davis prejudiced the jury. Furthermore, although defendant did use a peremptory challenge to remove Davis from the jury and ultimately exhausted all of his peremptory challenges before the last two jurors were selected, we conclude defendant has failed to establish that he was prejudiced by having to use a peremptory challenge to excuse Mr. Davis. Neither before the trial court nor before this court does defendant argue that the final two jurors were objectionable or that he was not tried by an impartial jury.[2]See Vanderpool, 493 So.2d at 575. See also Ross v. Oklahoma, 487 U.S. at 86-87, 108 S.Ct. at 2277-78.
The assignment of error lacks merit.

LEADING QUESTIONS
In the fourth assignment of error, defendant argues that the trial court erred when it overruled defendant's objection to leading questions posed by the state to Sue Ellen Burgess. Defendant contends that the witness's testimony elicited with the leading questions refuted his defense that he did not have specific intent to kill and, thus, prejudiced him.
Generally, leading questions should not be used on the direct examination of a witness. La.C.Ev. art. 611(C). A leading question is one suggesting the answer that the witness is expected to give. However, a question requiring a "yes" or "no" response is not leading unless the question further suggests to the witness the answer he is to give. State v. Anderson, 526 So.2d 499, 503 (La.App. 1st Cir.1988), writ denied, 537 So.2d 1160 (La. 1989). See also State v. Clayton, 570 So.2d 519, 527 (La.App. 5th Cir.1990). The use of leading questions is largely within the discretion of the trial court, and only a clear abuse of that discretion which prejudices the defendant's rights will justify the reversal of a conviction. State v. Young, 576 So.2d 1048, 1056 (La.App. 1st Cir.), writ denied, 584 So.2d 679 (La.1991).
Defendant's objection occurred during the following portion of the state's redirect of Ms. Burgess:
Q There was no waving of the gun where the gun crisscrossed Dan ten times where he could have shot Dan if he wanted, right?
A No. No.
Q The gun went in his chest and ...

*1043 [Defense Counsel]:
Objection, leading.
Q Did the gun go in his chest?
[Defense Counsel]:
Objection, leading.
[Prosecutor]:
That is not leading. She can answer that yes or no. I'm not suggesting an answer.
The Court:
Objection overruled.
The prosecutor's apparent intent in this line of questioning was to rebut the impression defendant attempted to make during cross-examination of the witnessthat defendant had the opportunity to shoot the victim during the struggle but did not choose to do so and, thus, did not have the requisite intent to kill.
To preserve the right to appeal an erroneous trial court ruling which admits evidence, the objecting party must make a "timely" objection. La.C.Ev. art. 103(A)(1). See also La.C.Cr.P. art. 841. The initial question asked by the prosecutor in the above excerpt was a leading question. However, defendant did not object until after the witness answered the question. Thus, the objection was untimely. The prosecutor had not finished asking the next question when the objection was made. After the objection, the question was rephrased and, although the question called for a "yes" or "no" response, the question did not suggest the answer and, thus, was not leading. Accordingly, the trial court did not err when it denied defendant's objection.
Furthermore, we fail to see how any substantial right of defendant was affected by this portion of the testimony. See La. C.Ev. art. 103(A). Defendant's implication that this testimony of Ms. Burgess was the only evidence that defendant intended to kill the victim simply is not supported by the record.
The assignment of error is without merit.

PROSECUTOR'S RECITATION OF LAW DURING CLOSING ARGUMENT
In the fifth assignment of error, defendant claims that the prosecutor's statement during closing argument (that the state would not be able to try defendant for armed robbery if he were found not guilty of first degree murder) was improper argument. Defendant argues that the jury members were improperly influenced by the state's argument because they would be afraid to acquit defendant of murder knowing that he could not later be tried for armed robbery.
During the closing argument of defendant, counsel argued that defendant's attempt to rob the victim had ended by the time Bobby Williams shot the victim and that defendant was trying to get away at the time. He suggested the jury should find defendant not guilty of murder so defendant could later be tried for the appropriate offense, attempted armed robbery:
And if you find that the armed robbery attempt has been terminated, then the only proper verdict is the verdict of not guilty and leave Mr. Ross to his fateto suffer the punishment in a different legal proceeding of attempted armed robbery.
In response to this argument, during rebuttal the prosecutor stated that defense counsel should know defendant could not be tried for armed robbery because of the prohibition against double jeopardy. Defense counsel objected to this argument as being a "misstatement of the law." The court overruled the objection.
Article 774 establishes the following limits for the scope of arguments by counsel:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
* * * * * *
The state's rebuttal shall be confined to answering the argument of the defendant.
*1044 Statements of law by a prosecutor during closing argument should be accurate. However, in order to overturn a conviction because of improper prosecutorial argument, this Court must be convinced that the jury was influenced by the remarks and that they contributed to the verdict. See State v. Sayles, 395 So.2d 695, 697 (La.1981).
The prosecutor's remark in the instant case did not misstate the law. The prohibition against double jeopardy forbids prosecution and conviction for both felony murder and the enumerated felony. See State v. Stewart, 400 So.2d 633, 635 n. 4 (La.1981). See also La.C.Cr.P. art. 596. The prosecutor's statement was made directly in response to defense counsel's argument. In rebuttal closing argument, the state has the right to answer the arguments of the defendant. State v. Thomas, 572 So.2d 681, 684 (La.App. 1st Cir.1990).
The assignment of error is meritless.

DENIAL OF REQUESTED JURY INSTRUCTION
In assignment of error number six, defendant maintains that the trial court erred when it refused to give defendant's special charge to the jury.
It is the duty of the trial judge to give a requested charge to the jury which does not require qualification, limitation, or explanation and is not included in the general charge or in another special charge to be given, if it is wholly correct and pertinent to the case. La.C.Cr.P. art. 807; State v. Shilling, 440 So.2d 110, 114 (La. 1983).
After the court instructed the jury at the conclusion of the guilt phase of the trial, defendant objected to the court's failure to instruct the jury that "[t]he defendant is not required by law to call any witnesses or to produce any evidence." In voicing the objection, counsel implied that he expected the trial court to include the instruction after he reviewed a written copy of the court's anticipated jury instructions. Contrary to the implication given in the assignment of error, the record contains no indication that defendant specially requested the instruction.
On appeal, defendant speculates that, as a result of the court's failure to instruct the jury on this point, the jury may have thought that defendant was guilty because he did not testify in his own defense. However, although the judge did not mention that defendant was not required to call any witnesses or to produce any evidence, the court specifically instructed the jury that defendant was not required to testify and that "no presumption of guilt may be raised, and no inference of any kind may be drawn from the fact that the defendant did not testify." Furthermore, because defendant called witnesses and produced evidence, he suffered no prejudice from the court's failure to instruct the jury that defendant was not required to present testimony.
The assignment of error is without merit.

DENIAL OF MOTION FOR NEW TRIAL
In assignment of error number seven, defendant adopts the arguments advanced in the other assignments of error and argues that the trial court erred when it denied defendant's notion for new trial. For the reasons expressed in the other assignments of error, this assignment is without merit.

SUFFICIENCY OF THE EVIDENCE
In assignments of error numbers eight and nine, defendant argues that the trial court erred when it denied defendant's motion for post verdict judgment of acquittal. Specifically, defendant maintains the evidence of specific intent to kill was insufficient.
In reviewing claims challenging the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979) (emphasis in original). See also La.C.Cr.P. art. *1045 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988).
The definition of first degree murder applicable in the instant case is as follows:
A. First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of ... armed robbery...;
* * * * * *
La.R.S. 14:30.
The evidence established that Bobby Williams fired the shots which killed the victim. However, as La.R.S. 14:24 states, all persons concerned in the commission of the crime are principals. From the testimony, it is obvious defendant and Williams were partners in the armed robbery attempt and homicide. Nevertheless, not all principals are automatically guilty of the same grade of offense. State v. Tobias, 452 So.2d 157, 159 (La.1984). To convict defendant of first degree murder, the state was required to demonstrate that defendant specifically intended to kill the victim or to inflict great bodily harm. Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1).
Defendant entered the K-Mart parking lot with Williams knowing they were going to rob somebody. Defendant also knew Williams stated earlier that, in connection with an armed robbery, he wanted to shoot somebody and to hurt somebody. When the victim was approached, defendant carried the gun and pointed it at the victim. The gun was fully loaded; and, because the victim was much larger than defendant, it is evident defendant intended to use the weapon for protection in the event the armed robbery victim did not cooperate. When the victim began to overpower defendant, defendant attempted to throw the weapon to Williams. Although defendant was not successful in getting the gun to Williams, Williams was able to pick up the gun while defendant and the victim continued to struggle. Williams then fired two shots from close range into vital areas of the victim's body. We conclude the evidence was sufficient to support a finding that defendant specifically intended the victim's death.
These assignments of error are without merit.

EXCESSIVE SENTENCE
In the tenth assignment of error, defendant mistakenly states that the forty-two year sentence he received is excessive. Defendant was found guilty of first degree murder. The jury unanimously determined that defendant should be sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence; and the trial court sentenced defendant accordingly. Thus, defendant's argument is inappropriate and the assignment of error is misstated. Defendant does not argue that imposition of a mandatory life sentence for a conviction of first degree murder is cruel and unusual. Were he to do so, such an argument would be rejected. See State v. Johnson, 553 So.2d 865, 873 (La.App. 1st Cir.1989), writ denied, 558 So.2d 600 (La. 1990); State v. Payne, 482 So.2d 178, 181 (La.App. 4th Cir.), writ denied, 487 So.2d 436 (La.1986).
Accordingly, the assignment of error is without merit.

CONCLUSION
For the above reasons, defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Both defendant and the state assert that defendant failed to exhaust his peremptory challenges. Our review of the record reveals otherwise.
[2] Although we find that the trial court's error in denying the defense challenge for cause in this case was harmless, we recognize that such error is not always harmless. In State v. Hallal, 557 So.2d 1388 (La.1990), the Louisiana Supreme Court found reversible error in the trial court's erroneous denial of a challenge for cause in a case in which the defense exhausted all of its peremptory challenges. However, neither the Supreme Court's per curiam nor the appellate decision indicates that the objectionable prospective juror was ever challenged peremptorily by the defense. See State v. Hallal, 544 So.2d 1222, 1230 (La.App. 3d Cir.1989). Apparently, the challenged juror served on the jury which convicted the defendant in Hallal. Therefore, the Supreme Court's decision in Hallal is distinguishable from the instant case and we are not constrained by it in our resolution of this assignment of error.