615 So.2d 1009 (1993)
STATE of Louisiana
v.
Bobby WILLIAMS.
No. 92 KA 0469.
Court of Appeal of Louisiana, First Circuit.
March 5, 1993.
Writ Denied June 4, 1993.
*1012 Mark Rhodes, Asst. Dist. Atty., Houma, for plaintiff and appelleeState.
Anthony P. Champagne, Office of Indigent Defenders, Houma, for defendant and appellant, Bobby Williams.
Before EDWARDS, SHORTESS and WHIPPLE, JJ.
SHORTESS, Judge.
Bobby Williams (defendant) was charged by grand jury indictment with the first degree murder of Daniel Kurt Anderson, LSA-R.S. 14:30. Defendant pled not guilty and, after trial by jury, was found guilty as charged.[1] At the sentencing hearing, the jury unanimously determined that defendant should be sentenced to imprisonment at hard labor for life without benefit of *1013 probation, parole, or suspension of sentence. The trial court sentenced defendant accordingly. Defendant appealed and urged 24 assignments of error. In brief, defendant abandoned several assignments of error, and the following remain for our consideration:
2. The trial court erred in denying defendant's motion to allow him to view the scene of the crime with his attorney.
3. The trial court erred in denying defendant's motions for funds for expert assistance and/or the appointment of experts.
10. The trial court erred in denying the request made by defendant in his motion in limine regarding references to "victim," "murder," and "murderer."
12. The trial court erred in denying defendant's motion for individual sequestered voir dire.
13. The trial court erred in denying relief sought by defendant in his motion in limine regarding gruesome photographs.
14. The trial court erred in denying defendant's objection to the prosecutor's remarks during voir dire.
15. The trial court erred in permitting the State to challenge for cause a potential juror, Darnell Williams.
16. The trial court erred in denying defendant's challenge for cause of potential jurors Marty Dupre and Chaudhry Billiot.
17. The trial court erred in denying defendant's objection to the introduction of State Exhibit S-1.
18. The trial court erred in denying defendant's objection to the testimony of Sue-Ellen Burgess relative to her thoughts and impressions.
19. The trial court erred in permitting the State to question Sue-Ellen Burgess on redirect examination.
20. The trial court erred in denying defendant's objection to the testimony of Dr. Rau relative to medical assistance rendered to Anderson.
21. The trial court erred in allowing Dr. Ledoux to testify concerning powder burns found on Anderson.
On March 23, 1989, Daniel Kurt Anderson and his neighbor, Sue-Ellen Burgess, went to the Fantasies Nightclub in Terrebonne Parish. Shortly before midnight, they walked to the parking lot where Anderson had parked his pickup truck. Anderson got very quiet, and shortly before they reached the truck, Burgess looked over her shoulder and saw two men following them very closely and quietly. Anderson told her to get inside the truck. Burgess got into the truck, reached for her seat belt, and immediately saw that Anderson had been attacked by one of the men.
The man pointed a gun at Anderson's stomach, but Anderson forced the man to drop the gun. A struggle ensued which progressed to the rear of the truck. The other man (whom Burgess positively identified at trial as defendant) remained standing near some shopping carts, watching the fight from that location. He made no move until the gun was dropped. Defendant walked over to the gun, picked it up, and walked toward the fight. Out of fear, Burgess ducked down inside the truck; she then heard two shots.
Anderson cried out to Burgess to get help because he had been shot twice. She ran across the street to a restaurant, told a security guard, and ran back to Anderson. Dr. David Rau, a general surgeon who was leaving the restaurant, ran to the scene. He and emergency medical personnel who arrived later attempted to resuscitate Anderson, but he died from his gunshot wounds. One of the wounds was to the left side at the base of his neck, and the other wound was in his right lower chest and upper abdomen area.
Within a matter of minutes, with the assistance of a tracking dog, the police apprehended defendant. Defendant was given his Miranda rights and handcuffed. In the area where defendant was apprehended, the police found a .22 caliber nine-shot magnum revolver. The gun had seven live bullets and two empty casings. Subsequent ballistics tests conducted by Patrick Lane, an expert in the field of firearms identification employed at the Louisiana *1014 State Police Crime Laboratory, determined this gun was the weapon which fired the fatal shots.
While Deputy Thomas J. Collins was transporting defendant to the Terrebonne Parish Sheriff's Office in his police unit, he heard defendant "rapping," i.e., repeating words and rhymes. According to Collins' testimony, the gist of the words and rhymes he overheard were: "Whitey's on the floor, I'm going to get some more."[2] Collins testified defendant repeatedly used these words and rhymes while he was being transported.
Later at the Sheriff's Office, Detective Terry Fanguy heard noises coming from the interrogation room. When Fanguy approached the room, Lieutenant Luke, who was outside the interrogation room, told Fanguy to listen. Fanguy heard defendant (who was alone in the interrogation room) say, "If I had [a] gun, I would kill that f___ bitch. I would also kill every f___ cop and when I got out of prison, I would kill again." According to Fanguy, defendant was yelling the statements. Fanguy and Luke entered the interrogation room. Fanguy then asked defendant if he understood his Miranda rights; defendant answered: "You're f___ right, yes." At that point, Fanguy and Luke escorted defendant to the jail, where he was booked.

ASSIGNMENT OF ERROR NUMBER TWO:[3]
Defendant contends the trial court committed reversible error in denying his pretrial motion to allow him to view the scene of the crime with his attorney. The motion was filed on June 23, 1989, and denied by the court on July 13, 1990, eight months prior to trial. Therein, defendant requested an order requiring he be taken to view the scene of the crime with his attorney at least one week before a hearing on pretrial motions or, in the alternative, before trial. The motion recited it was necessary for defendant to view the scene so his counsel could take pictures and measurements and otherwise properly investigate the scene with defendant's assistance.
Defendant argues he was entitled to view the crime scene pursuant to Louisiana Code of Criminal Procedure article 762(2). These provisions apply only to the trial court's discretion to hold sessions of court at places other than the courthouse to allow the jury or the court to view the crime scene or to view an object which is admissible in evidence but which is difficult to produce in court. Since defendant's motion asked for an order that he be taken to the crime scene prior to a hearing on motions or prior to trial and did not in any way relate to the trial court's discretion to hold sessions of court at a location other than the courthouse, the provisions of article 762(2) were inapplicable and did not serve as authority for the granting of defendant's motion.
Defendant also argues the motion should have been granted pursuant to Louisiana Code of Criminal Procedure article 718, which provides in part that on motion of a defendant the court shall order the district attorney to permit or authorize the defendant to inspect, examine, or photograph tangible objects, buildings, and places within the possession, custody, or control of the State which "are favorable to the defendant and which are material and relevant to the issue of guilt or punishment." The crime scene (the K-mart parking lot) was part of a business establishment open for business to the general public and not a place within the possession, custody, or control of the State. Accordingly, these premises were accessible to defense counsel for the purposes stated in the motion, i.e., to take pictures and measurements and otherwise properly investigate the scene.
The essence of defendant's contentions is that a court order should have been issued compelling his presence at the crime scene with his counsel for the purposes stated in the motion. However, defendant does not claim, nor does the record show, *1015 that he was prejudiced by the trial court's denial of the motion to compel his presence at the crime scene.
Under the circumstances present in this case, we do not find any abuse of discretion by the district court in denying the motion. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE:
Defendant contends the trial court committed reversible error in denying his motion to provide funds for expert assistance and a subsequent motion to reconsider and/or to appoint an expert. In support of this contention, defendant relies on the failure of the State to provide him funds for experts, particularly and for psychiatric evaluations and assistance.
The original motion seeking funds for expert assistance was filed on June 23, 1989, and denied on July 13, 1990. The second motion, which was filed on December 13, 1990, bears a notation indicating it was denied by the district court that same date. Defendant filed a writ application with this court, number KW 90 2248, seeking reversal of the lower court's denial of these motions. On December 15, 1990, we denied the application.
Thereafter, on December 17, 1990, defendant filed and was granted a motion to continue his trial until March 11, 1991. In the December 17, 1990, motion for continuance, defendant expressly stated that if granted the continuance, he would hire a psychiatrist through his own means and at no cost to the State. The record reflects the prosecutor informed the lower court at the hearing on the motion that the State did not object to this evaluation of the accused, and the record does not reflect defendant filed any additional motions seeking funds from the State for expert assistance. Under these circumstances, defendant's contention that he was entitled to and denied State funds for expert assistance is not only unsubstantiated but expressly contradicted by defendant's statement in the December 17 motion for continuance. Accordingly, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TEN:
Defendant contends the trial court committed reversible error in denying his pretrial motion in limine regarding references to "victim" and "murder." In said motion, defendant requested (1) the trial court issue an order and give instructions prior to trial that references to Daniel K. Anderson as the "victim," the investigation as pertaining to a "murder," and to defendant as the "murderer" not be made in front of the jury, and (2) documentary evidence bearing such references be inadmissible. Without citing any examples of such references during the trial, defendant argues any such references through testimony or documentary evidence introduced by the State had no probative value but, instead, were prejudicial and inflammatory and should have been restricted.
The indictment charged defendant with the first degree murder of Daniel Kurt Anderson. Accordingly, the jury was fully aware the charged offense was murder and Anderson was the alleged victim. In our view, the trial court did not err by denying the motion in regard to any references to "murder" and "victim." Even assuming, arguendo, the impropriety of these references, we cannot say they reasonably might have contributed to the conviction. Therefore, if there was error, it was harmless. Cf. State v. Ward, 483 So.2d 578, 584 (La.), cert denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 168 (1986).
Insofar as the motion sought to restrict the use of references to defendant as the "murderer," the motion should have been granted, since the ultimate issue to be determined by the jury was whether defendant was the murderer. Nevertheless, since defendant does not contend references to him as the murderer actually occurred through testimony or documentary evidence, nor does the record disclose any, the failure of the trial court to grant the motion insofar as it sought to restrict any reference to defendant as the murderer was harmless error.
This assignment lacks merit.

*1016 ASSIGNMENT OF ERROR NUMBER TWELVE:
Defendant contends the trial court erred in denying his motion for individual sequestered voir dire. Defendant argues his motion should have been granted on two bases: (1) he was charged with first degree murder and therefore exposed to the death penalty; and (2) the case had received extensive pretrial publicity.
There is no provision in our law which either prohibits or requires the sequestration of prospective jurors for an individual voir dire. The trial court has discretion to decide whether the jurors should be called singly or in groups. State v. Copeland, 530 So.2d 526, 535 (La.1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989). The defendant has the burden to show the court abused its discretion in refusing to sequester the venire during voir dire. State v. Vampran, 491 So.2d 1356, 1364 (La.App. 1st Cir.), writ denied, 496 So.2d 347 (La.1986). A trial court has the discretion to permit individual voir dire if a defendant can demonstrate that special circumstances are present. Absent special circumstances, the trial court does not err in refusing requests for individual voir dire. State v. Comeaux, 514 So.2d 84, 88 (La.1987).
The fact that defendant faced a possible death sentence if convicted did not establish a "special circumstance" requiring a variation from the general rule of trial court discretion. State v. Comeaux, 514 So.2d at 88. Regarding the other basis upon which defendant relies, at an earlier hearing on a motion for change of venue filed by defendant, the record reflects defendant moved to withdraw the motion and was permitted by the court to do so. Defendant failed to meet his burden of showing special circumstances to justify individual sequestered voir dire, and the trial court did not err in denying the motion therefor.
This assignment lacks merit.

ASSIGNMENTS OF ERROR NUMBERS THIRTEEN AND SEVENTEEN:
Defendant contends the trial court erred in allowing an autopsy photograph of Anderson into evidence. He essentially argues any probative value of the photograph was outweighed by its prejudicial and inflammatory effect.
Postmortem photographs of murder victims are admissible to prove corpus delicti, to corroborate other evidence establishing the cause of death, and to provide positive identification of the victim. The admission of allegedly gruesome photographs will not be overturned unless it is clear the prejudicial effect of the photographs outweighs their probative value. State v. Jones, 593 So.2d 1301, 1308 (La. App. 1st Cir.1991). Although a stipulation to the matter sought to be proved by the photographs necessarily bears upon a balancing of the probative value of the photographs against their prejudicial effect, the State cannot be robbed of the fair and legitimate moral force of its case merely because the stipulation is offered. See State v. Watson, 449 So.2d 1321, 1326 (La. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985).
The exhibit is an enlarged, color photograph depicting the upper portion of Anderson's body, beginning at the upper chest. The photograph is not unduly prejudicial or so gruesome as to have overwhelmed the jurors' reason and led them to convict defendant without sufficient other evidence. See State v. Copeland, 530 So.2d at 543; State v. Watson, 449 So.2d at 1326. Although unpleasant, the photograph was relevant and probative in proving the State's case against defendant; it proved corpus delicti, helped identify the victim, and corroborated the cause of death, the type of weapon used, and the location and severity of the wounds. See State v. Perry, 502 So.2d 543, 559 (La. 1986), cert. denied, 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987).
These assignments lack merit.

ASSIGNMENT OF ERROR NUMBER FOURTEEN:
Defendant contends the trial court committed reversible error in overruling defendant's objection to comments made by the *1017 prosecutor during voir dire examination. Defendant asserts the ruling resulted in prejudice to him since it in effect allowed the prosecutor to give two opening statements.
The alleged improper comments were made by the prosecutor during his voir dire examination of the initial panel of sixteen prospective jurors. The comments at issue are underscored in the following quoted excerpt, which discloses the context in which they were made:
There is a rule of law in our State, as in many states, that says, if you are a party to a crime, you are as guilty as everybody involved in that crime. It's the law of princip[als]. Mr. Womack [one of the prospective jurors] and I decide that we'[r]e going to rob his garden center. The deal is that I'm going to go in and I'm going to buy a lot of goods, bring them home and I'm going to come back and I'm only going to return half of them. Say my wife doesn't like them and he's going to give me a full refund. Then I'm going to take the other half that I left at my house and he and I are going to split them for our own personal use or we're going to sell them.
He's as guilty as I am of theft. Even though I'm the one that went [to] get them. I wrote the check. I went back. I got the refund. He's as guilty as me. He's guilty of the same thing. Okay? He is a princip[al] to theft. In Mr. William[s'] case, there is another individual, Tieski Ross. All right. We didn't ask you if you knew Tieski Ross. Tieski Ross was with Mr. Williams when this murder occurred.

The fact that Mr. Williams was with another person.
. . . . .
MR. CUNNINGHAM:
Your Honor, I'm going to interpose an objection at this point in time. I don't see that this is the proper focus of voir dire. Mr. Rhodes seems to be in an Opening Statement at this point in time. Unless there's some particular fact that he's trying to point out, I would interpose a serious objection at this point, Your Honor. This only serves a prejudicial effect, [a cumulative] prejudicial effect, because I can see an Opening Statement in the making at this point in time.
(Emphasis added.) The trial court overruled defendant's objection without giving any reasons for the ruling, and the prosecutor continued his voir dire examination of individual members of the panel regarding the law of principals.
The court, the State, and the defendant have the right to examine prospective jurors. The scope of examination is within the discretion of the court. La. C.Cr.P. art. 786. Voir dire examination of prospective jurors is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. State v. Bertrand, 381 So.2d 489, 491 (La.1980). It is well settled that the scope of voir dire examination is within the trial court's sound discretion, and its ruling will not be disturbed in the absence of a clear abuse of discretion. Finally, in evaluating the fairness of the ruling, the entire examination will be considered. State v. Kohler, 434 So.2d 1110, 1118 (La.App. 1st Cir.1983).
We find no abuse of discretion in the trial court's ruling in this case based on the objection articulated by defense counsel in the above-quoted excerpt. Clearly, the context in which the comments at issue were made disclose the prosecutor was explaining the law of principals to the prospective jurors and questioning them as to their understanding of the application of that law in an apparent effort to discover bases for challenges for cause and to secure information for the State's intelligent exercise of peremptory challenges. Although we are troubled by a portion of the comment, i.e., Ross having been with Williams when this murder occurred, the comments at issue are otherwise within the proper scope of voir dire. While this portion of the comment was ill-advised, we cannot say it reasonably might have contributed to the conviction. Accordingly, any error occasioned thereby is harmless. Cf. State v. Ward, 483 So.2d at 584.
This assignment lacks merit.

*1018 ASSIGNMENT OF ERROR NUMBER FIFTEEN:
Defendant contends the trial court erred when it sustained the state's challenge for cause of prospective juror Darnell Williams. Defendant essentially argues that, although Williams initially indicated during voir dire he could not impose the death penalty, he was subsequently "rehabilitated."
During his voir dire examination, Williams consistently responded no less than eight times that under no circumstances would he vote to impose the death penalty. However, Williams then indicated he would consider the death penalty in the hypothetical situation in which an offender had broken into a house, raped two children, and killed them by cutting their throats. Thereafter, the following colloquy occurred:
THE COURT: ...
Mr. Williams, Darnell Williams, when I talked to you earlier, I asked you the question if under any circumstances could you possibly give the death sentence and you said, "No." Is that correct?
MR. WILLIAMS:
Yes, sir.
THE COURT:
So under no circumstances would you give the death penalty, is that correct?
MR. WILLIAMS:
Yes, I do. When the lawyer said about Ms. Johnson would said (sic) she had two little kids, all right, and a[n] older person raped them. That would be the only way I sway for the death penalty because, you know, an adult hurting two little small kids....
THE COURT:
Okay, so you're saying when the rape of the children is involved like, but all other circumstances, "No"?
MR. WILLIAMS:
In the situation with the little kids, yes, the death penalty would be provided.
THE COURT:
Okay. In this case there are no little, there's no rape of any little kids.
MR. WILLIAMS:
It's more like in this case here, it's more equal. All right. You got two people that know better, you know, you got one person ...
THE COURT:
Okay, let's not go into the facts of the case. I'm just saying that in this particular case, the one that's before us now, you could not consider the death penalty, is that correct?
MR. WILLIAMS:
In the case, I'd have to see the facts just to know the evidence would be given.
THE COURT:
Okay, now, again, I asked you a little while ago and you said, "Under no circumstances would you consider it." Now, you tell me that you may be able to consider it. I need to get an answer from you, Mr. Williams. Can you consider, listen closely, can you consider the death penalty in this particular case? I'm not saying to give the death penalty or not to give it. I'm asking if you can consider to give the death penalty in this case? Yes or no?
MR. WILLIAMS:
Yes.
In granting the State's challenge for cause because of his opposition to the imposition of the death penalty, the trial court stated the following, "He said back and forth. I don't know what he believes. For that reason, I will strike him for cause."
Notwithstanding Williams' final response in the excerpt quoted above, our review of the entirety of Williams' responses during his voir dire leads us to conclude the total impression of his voir dire testimony was that his strong opposition to capital punishment would lead him to vote against the imposition of the death penalty. Cf. State v. Brown, 514 So.2d 99, 103-104 (La.1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988). We find no abuse of discretion by the trial court in granting the challenge for cause. Moreover, even assuming arguendo the challenge was erroneously granted, defendant does not have a *1019 valid complaint of a Witherspoon[4] violation because the jury did not recommend the death penalty. It has been expressly held a defendant insulated from the death penalty does not have a valid Witherspoon complaint. State v. Kohler, 434 So.2d at 1121.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER SIXTEEN:
Defendant contends the trial court committed reversible error in denying his challenges for cause of prospective jurors Marty Dupre and Chaudhry Billiot. Defendant argues his challenges of these prospective jurors should have been granted since their responses showed that each had a steadfast belief as to defendant's guilt and could not follow or accept the law as given by the trial court.
Louisiana Code of Criminal Procedure article 797 provides in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
....
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
....
(4) The juror will not accept the law as given to him by the court....
However, a trial court has broad discretion in ruling on challenges for cause. State v. Welcome, 458 So.2d 1235, 1241 (La.1983), cert. denied, 105 S.Ct. 1856 (1985). A refusal by a trial court to excuse a prospective juror on the ground he is not impartial is not an abuse of discretion where, after further inquiry or instruction, he has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. State v. Copeland, 530 So.2d at 534.
Dupre testified that about a week after the incident in which Anderson was shot, he talked to Keith Henry, who is "like a brother" to him. Henry had tried to render assistance to Anderson after the shooting. According to Dupre, at the time they talked he had formed an opinion concerning guilt or innocence. Dupre had not otherwise read or heard anything about the matter. Dupre indicated in response to defense counsel's questioning that if he believed from the evidence presented defendant was innocent and the other jurors thought defendant was guilty, he was "pretty sure" he would not change his position because of his convictions. During this questioning, Dupre also indicated he understood the State had to prove defendant's guilt beyond a reasonable doubt. Thereafter, the trial court instructed Dupre, in connection with defendant's presumption of innocence, that as defendant presently stood before the court, defendant was not guilty. The court asked Dupre if he understood that instruction. Dupre responded in the affirmative. The court then asked Dupre how he could say defendant was not guilty in light of the opinion he had stated he had formed in connection with the prior discussion with the friend. Dupre answered that defendant was not guilty until proven otherwise. Dupre then reiterated his opinion that defendant was not guilty.
Billiot answered, in response to the trial court's questioning concerning whether she had an opinion regarding defendant's guilt, "If he was arrested, they must have some evidence against him." The court then admonished Billiot that defendant was innocent until proven guilty. Thereafter, the court asked Billiot if she could pledge to the court she could put her feelings aside and promise that, as defendant presently stood, without evidence, he was not guilty. She responded in the affirmative. However, when Billiot was asked during subsequent questioning by defense counsel, if she had an opinion about the case, she answered that, based on what she had read, she assumed defendant was guilty.
*1020 The trial court denied defendant's challenges for cause of Dupre and Billiot. Defendant exercised a peremptory challenge to excuse Dupre, and the State used one of its peremptory challenges to exclude Billiot from the jury.
Dupre was sufficiently rehabilitated; thus, the trial court did not abuse its discretion in denying the challenge. Billiot's last response was that she would assume defendant would be guilty. Because no rehabilitation followed this response, the trial court abused its discretion in denying the challenge of her for cause.
However, the erroneous denial of a challenge for cause is not automatically reversible error. To defeat application of the harmless error rule, the defendant must establish he was prejudiced by the court's ruling. State v. Vanderpool, 493 So.2d 574, 575 (La.1986); State v. Ross, 604 So.2d 1036, 1042 (La.App. 1st Cir.1992). In this case the State used one of its peremptory challenges to excuse Billiot. Defendant clearly was not prejudiced by the court's erroneous denial of the challenge; hence, the error was harmless.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER EIGHTEEN:
Defendant contends the trial court erred in overruling defense counsel's objection to testimony given by Sue-Ellen Burgess regarding her opinions and impressions.
Defendant's objection occurred during the following exchange, while the prosecutor was questioning Burgess on direct examination:
Q. When the man put the gun on Dan, let's back, what did you think was happening?
A. I thought it was a robbery. That was my first instinct.
MR. CUNNINGHAM:
Your Honor, I'm going to object to any impressions that the witness may have had. This is not an impressionable situation. You have to have facts.
MR. RHODES:
Judge, any lay witness can testify to what is patently obvious and give a [lay person's] impression. And I think it's certainly obvious that if you get into a truck and two guys jump upon you and pull a gun out in your chest, that it's a [logical] conclusion, whether or not a robbery took place is a matter for the jury to decide.
But she can give her impression as to what took place.
MR. CUNNINGHAM:
Your Honor, that is exactly the point. This is a legal question. This is the source of the whole issue. That is for the jury to decide. I mean I haven't heard any evidence about "stick it up." You know, "Stick `em up" or "Give me your wallet" or anything to indicate that this was a robbery.
MR. RHODES:
That implies that you have to say, "Stick `em up" to commit an armed robbery.
THE COURT:
Objection is overruled.
Thereafter, the prosecutor continued this line of questioning, eliciting the following testimony:
Q. What did you think was happening, Sue Ellen, when these two guys came up, what did you think was happening?
A. I thought that the[y] were robbing Dan.
Q. All right. When you put your head down on the front seat, what did you think about?
A. It was after, I was thinking the whole time, I was scared to death. I mean. And then after I heard the shots, I thought, I was so scared I thought to myself, "Well, they're not going to leave me because I saw them." I mean, I made contact with them. I saw him.
And I was basically crouched down waiting ... to get shot myself. I was horrified and all I could think of, I was never going to see my little babies again.
We note defendant argues in brief a ground not articulated to the trial court and argued for the first time on appeal, i.e., that the testimony at issue was irrelevant. *1021 It is well settled counsel must state the basis for his objection when making it and point out the specific error which the trial court is making. La.C.Cr.P. art. 841. A defendant is limited on appeal to grounds for objection articulated at trial. A new basis for objection cannot be raised for the first time on appeal. State v. Brown, 481 So.2d 679, 686-687 (La.App. 1st Cir.1985), writ denied, 486 So.2d 747 (La.1986). Because the relevancy ground was not raised at the time of objection, it is not properly before us. We now turn our attention to the issue properly before us.
To preserve the right to appeal an erroneous trial court ruling which admits evidence, the objecting party must make a "timely" objection. La.Code Evid. art. 103(A)(1). See also La.C.Cr.P. art. 841. Defendant did not object to the prosecutor's question as to what Burgess thought was happening (when the gun was put to Anderson's stomach) until after Burgess had answered she thought it was a robbery. Thus, the objection was untimely, since the question clearly sought to elicit the witness' response in the form of an opinion or inference. Nevertheless, pursuant to Louisiana Code of Evidence article 701, a witness who is not testifying as an expert (such as Burgess) may give testimony in the form of opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of the witness' testimony or the determination of a fact in issue. Burgess was an eyewitness. Her testimony concerning her opinions and inferences was admissible in accordance with the requirements of article 701. This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER NINETEEN:
Defendant contends the trial court erred in allowing the prosecutor to question Burgess on redirect examination as to a matter not brought out on cross-examination.
Louisiana Code of Evidence article 611(D) provides as follows:
D. Scope of redirect examination; recross examination. A witness who has been cross-examined is subject to redirect examination as to matters covered on cross-examination and, in the discretion of the court, as to other matters in the case. When the court has allowed a party to bring out new matter on redirect, the other parties shall be provided an opportunity to recross on such matters.
On direct examination, Burgess positively identified defendant as the man who was standing near the shopping carts, picked up the gun, and walked toward the fight just before the shots were fired. She also identified a State exhibit as a photograph accurately depicting defendant. Although Burgess' cross-examination did not specifically and directly focus on the photograph, much of it was devoted to questions probing the accuracy of Burgess' identification of defendant and was designed to discredit her identification testimony. Thereafter, on redirect examination, the prosecutor asked Burgess whether the person depicted in the photograph resembled anyone in the courtroom. The witness answered in the affirmative. Over defendant's objection, the witness was permitted to testify that the individual depicted in the photograph appeared to be the defendant.
A trial court has wide discretion in controlling redirect and recross examinations, and its rulings are not to be disturbed in the absence of an abuse of that discretion. State v. Wright, 593 So.2d 759, 764 (La. App. 5th Cir.), writ denied, 599 So.2d 313 (La.), cert. denied, ___ U.S. ___, 113 S.Ct. 340, 121 L.Ed.2d 257 (1992). The testimony at issue related to matters dealt with on cross-examination concerning the witness' identification of defendant and was not a new matter. Thus, there was no abuse of discretion by the trial court.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWENTY:
Defendant contends the trial court committed reversible error in allowing Dr. David Rau to testify, over defendant's relevancy objection, as to his efforts to revive *1022 Anderson at the crime scene, in the ambulance, and at the hospital.
Relevant evidence is evidence which tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La.Code Evid. art. 401. All relevant evidence is admissible except as otherwise provided by positive law. La.Code Evid. art. 402. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or waste of time. La.Code Evid. art. 403. Under the jurisprudence prior to the enactment of the Louisiana Code of Evidence, the test for admissibility of relevant evidence was similar to that under Code of Evidence article 403, i.e., whether or not the prejudicial effect outweighs the probative value. State v. Ross, 572 So.2d 238, 241 (La.App. 1st Cir.1990).
The testimony of Rau was relevant to prove the corpus delicti and was used to corroborate other evidence of the manner in which death occurred. See State v. Ross, 572 So.2d at 241. After reviewing the doctor's testimony, we find its probative value outweighed any prejudicial effect. The admissibility of his testimony was within the trial court's discretion; consequently, this assignment is without merit.

ASSIGNMENT OF ERROR NUMBER TWENTY-ONE:
Defendant contends the trial court committed reversible error in allowing Dr. Charles Joseph Ledoux, a deputy coroner, to testify over defendant's objection in regard to gunpowder burns found on Anderson's body. Defendant argues this testimony was outside the doctor's field of expertise because the doctor was not qualified as an expert in ballistics or forensic science and was not otherwise qualified to testify as to the cause and effect of powder burns.
Louisiana Code of Evidence article 702 provides as follows:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
The trial court is vested with wide discretion in determining the competence of an expert witness, and its ruling on the qualification of the witness will not be disturbed absent an abuse of discretion. State v. Trahan, 576 So.2d 1, 8 (La.1990). However an expert witness may not give expert testimony beyond the scope of the field of expertise in which he is qualified. See State v. Bosworth, 593 So.2d 1356, 1360 (La.App. 4th Cir.), writ denied, 600 So.2d 658 (La.1992).
Ledoux, who performed the autopsy on Anderson, was accepted by the trial court as an expert in the field of cause of death. In qualifying as such an expert, the doctor testified that in his capacity as deputy coroner he had "probably" performed "a couple of hundred" autopsies.
In regard to the autopsy he performed on Anderson, the doctor testified it consisted of both external and internal examinations. Ledoux stated the external examination revealed two entrance wounds, one on the left side at the base of the neck and the other on the right side in the lower chest, and powder burns about the head, neck, and face on the left side. Using the autopsy photograph, Ledoux pointed out the powder burns and gunshot wound to the base of the neck. He testified without objection that the wound had been inflicted from a distance of 3 to 24 inches. Accordingly, because defendant made no contemporaneous objection to this testimony, he waived any objection. See La.Code Evid. art. 103(A)(1); La.C.Cr.P. art. 841. In any event, while the doctor had qualified in this case only as an expert in the cause of death and not in the area of ballistics, he could testify to the existence of powder burns, a matter of which he had gained personal knowledge through his observations during *1023 the autopsy. See La.Code Evid. arts. 602 and 703. On the other hand, the doctor's testimony concerning his approximation of the distance from which the gun was fired to produce the powder burns and the various factors related to the production of powder burns appears to exceed the scope of his field of expertise. Nevertheless, this testimony, relating to the approximate distance from which it might be inferred that either of the fatal shots were fired, was harmless beyond a reasonable doubt. See La.C.Cr.P. art. 921; State v. Henderson, 352 So.2d 206 (La.1977).
This assignment lacks merit.
For the reasons stated we affirm defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] Although the indictment jointly charged defendant and co-defendant Tyskie Tyrone Ross, defendant was tried alone on the charge. In a separate trial, Ross was found guilty of the first degree murder of Daniel Kurt Anderson and sentenced to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. See State v. Ross, 604 So.2d 1036 (La.App. 1st Cir.1992).
[2] The record reflects the victim was white.
[3] We will maintain the same sequential numbers used by defendant before he abandoned certain assignments of error.
[4] See Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).