971 So.2d 416 (2007)
STATE of Louisiana
v.
Alejandro LOPEZ and Jose Hernandez.
No. 2007-KA-0701.
Court of Appeal of Louisiana, Fourth Circuit.
November 7, 2007.
*417 Eddie J. Jordan, Jr., District Attorney of Orleans Parish, Battle Bell, IV, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, for Plaintiff/Appellee.
R. Judson Mitchell, Jr., Supervising Attorney, Paula J. Rodriguez, Student Practitioner, Loyola Law Clinic, New Orleans, Louisiana, for Defendant/Appellant.
(Court composed of Judge CHARLES R. JONES, Judge JAMES F. McKAY III, Judge ROLAND L. BELSOME).
McKAY, III, Judge.
On April 6, 2006, defendants Alejandro Lopez and Jose Hernandez were charged by bill of information with attempted looting in violation of La. R.S. 14:(27)62.5. Defendants entered pleas of not guilty at their arraignment on May 17, 2006. The State, on August 14, 2006, amended the bill of information to charge defendants with looting during a state of emergency. Defendants filed discovery and suppression motions on September 1, 2006. After a preliminary and suppression hearing on November 8, 2007, the trial court found probable cause and denied the defendants' motions to suppress evidence. After a bench trial on March 2, 2007, the defendants were found guilty of looting. On April 4, 2007, both defendants were sentenced to three years at hard labor with credit for time served. On the same day, the defendants filed a notice of appeal, which was granted by the trial court.
STATEMENT OF FACT
Prior to Hurricane Katrina, Katrena Ndang resided at 2338 Robert E. Lee Boulevard. After the hurricane, Ms. Ndang hired someone to gut the downstairs portion of her house. The upstairs contained all her furniture, clothing and other furnishings, including her computer. Ms. Ndang would go to the house every day. At approximately 6:00 p.m. on February 6, 2006, she went to the house and found the front door wide open. She had closed and tied the door shut the day before. She heard people upstairs and closed the door. Ms. Ndang then returned to her car and called 911.
Police officers arrived shortly thereafter and entered the house. The officers found the two defendants inside the house. Ms. Ndang did not know the defendants and did not give them permission to enter the house. When Ms. Ndang entered the house she noticed that her coin purse and a bottle of perfume, which had been upstairs, were downstairs. Upstairs, she found the bedroom in disarray, items had been taken out the closet and thrown around and drawers were taken out the dresser.
New Orleans Police Officer Nathan McGhee responded to the call in reference to a burglary at 2338 Robert E. Lee Boulevard. When Officer McGhee arrived on the scene, he spoke with Ms. Ndang who told him that she heard people upstairs rummaging through her house. Officer McGhee conducted a search of the house and found defendant Lopez underneath the stairwell. Lopez attempted to run from McGhee, but McGhee was able to apprehend him. Hernandez was attempting to get out the back iron door. Hernandez tried to escape but other police officers, who had arrived on the scene, captured him. Officer McGhee continued his search of the *418 house. Ms. Ndang noticed that her coin purse was downstairs. When the officer went upstairs, he noticed that the bedroom had been ransacked. The crime lab was called out to take photographs.
Jose Hernandez and Alejandro Lopez are itinerant construction workers who came to New Orleans after Hurricane Katrina. They testified that they were hired by a man named Arthur or Arturo to do sheetrock and painting work. Arturo would take them to the places where he needed them to work. On February 6, 2006, they started working on a house in the area around 8:30 a.m. and finished around 5:30 p.m. Arturo picked them up from that house and told them that they were going to start working on another house that evening. He dropped them off near the Ms. Ndang's house and told them that he would be back. According to the defendants, Arturo would drop them off at the house where they were to work before getting the supplies. They would often wait until Arturo returned with the construction supplies. However, Arturo did not return, and the defendants went into the house to wait for Arturo. They were in the house for about one hour and did not go upstairs. They both stated that the door was open when they arrived at the house and did not see Ms. Ndang come to the door.
ERRORS PATENT
A review of the record for errors patent reveals that the defendants were not arraigned after the bill of information was amended on August 14, 2006, to charge defendants with looting during a state of emergency. However, defendants waived their right to object to this error when they proceeded with the trial on the merits. La.C.Cr.P. article 555.[1]
ASSIGNMENT OF ERROR NUMBER 1
In their sole assignment of error, the defendants argue that the State failed to produce sufficient evidence to support convictions for looting.
This Court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. "[A] reviewing court is not called upon to decide whether *419 it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319, 1324 (La.1992).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
Id. at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
La. R.S. 14:62.5(A) defines looting as
the intentional entry by a person without authorization into any dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person, or any structure belonging to another and used in whole or in part as a place of business, or any vehicle, watercraft, building, plant, establishment, or other structure, movable or immovable, in which normal security of property is not present by virtue of a hurricane, flood, fire, act of God, or force majeure of any kind, or by virtue of a riot, mob, or other human agency, and the obtaining or exerting control over or damaging or removing property of the owner.
Therefore, in order to convict a defendant of looting, the State must prove that the defendant perpetrated the act of (1) intentionally entering a dwelling owned and used, in whole or part, as a home by another person, (2) lacking normal security because of a hurricane, flood, act of God, or force majeure of any kind, and (3) obtaining, exerting control over, damaging or removing property of the owner.
In State v. Browning, 06-929 (La.App. 5 Cir. 4/11/07), 956 So.2d 65, the defendant was convicted of attempted looting of a business during a state of emergency. On appeal, the defendant argued that the State failed to prove that he attempted to obtain, exert control over, damage or remove property of the owner. The Fifth Circuit found that the State produced sufficient evidence to support the conviction. The court relied upon the testimony of the business owner and the deputies who responded to the looting call and apprehended the defendant. Mr. Savoie, the owner of the business, testified that he stored televisions in their boxes on shelves in the storeroom. He also stated that the only entrance into the damaged building was through a hole in an exterior wall. The deputies who investigated the incident testified that it was not easy to gain entrance due to debris near the hole in the wall. The deputies further stated that they arrived on the scene within five minutes of receiving the looting call, and the defendant was the only person found in the building. The deputies found the defendant hiding in the corner of the storeroom behind some debris. The witnesses also testified that a television was found out of its box on top of the debris and was adjacent to the hole in the wall. The *420 television was the only television not in its box or properly stacked.
In the present case, Ms. Ndang testified that her house had been gutted as result of damage from Hurricane Katrina. She stated that she would tie the front door closed because the door could not be locked in the normal manner due to damage from the hurricane. Ms. Ndang further testified that when she arrived at her home, she heard people upstairs. Officer McGhee stated that he found the defendants hiding in the house. Both defendants attempted to flee when they saw the police officers. Defendants admitted that they were in the house. They both stated that they entered the house after waiting for their boss to return. Additionally, Ms. Ndang and Officer McGhee testified that the upstairs was ransacked and items were displaced. Ms. Ndang testified that two items which had been upstairs, her coin purse and a bottle of perfume, were found downstairs. Such testimony was sufficient to prove that the defendants entered Ms. Ndang's home which lacked normal security due to Hurricane Katrina and exerted control over and removal of Ms. Ndang's property. The State met its burden of proving that the defendants were guilty of looting.
CONCLUSION
Accordingly, we affirm the defendants' convictions and sentences.
AFFIRMED.
NOTES
[1] La.C.Cr. P. article 555 provides that "[a]ny irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty."