MOON LANDRIEU, Judge Pro Tempore.
liThe State filed a bill of information charging the defendant, Reuben Collier, with one count of looting, a violation of La. R.S. 14:62.5, to which the defendant pled not guilty. Following the trial, a twelve-person jury returned a verdict of guilty of attempted looting. The defendant through counsel filed a motion for post verdict judgment of acquittal, which the trial court denied. The court then sentenced the defendant to serve four years at hard labor to run concurrently with any other sentences. The defendant appealed.
STATEMENT OF THE FACTS
On June 17, 2006, Ms. Dawn Horvath was residing at her home on Paris Avenue, which recently had been repaired following Hurricane Katrina. In the mid-morning hours she was preparing to leave to run errands when she saw the defendant riding a bicycle in the street which runs behind her house. It appeared to Ms. Horvath that the defendant was looking for something because he was riding up and down the street. She watched him as he rode his bike up a driveway of a house which was unoccupied. She continued to watch as he dropped his bike near a gate and entered the backyard of the house.
| ¡After securing her son in his car seat, Ms. Horvath decided to wait a few minutes to see if the defendant returned; she thought perhaps he had entered the backyard because he needed a place to urinate. However, he did not come back out. Therefore, she drove around to the street running in front of her neighbor’s home, but she still did not see him. At that point, she decided to alert the police.
Initially, Ms. Horvath stopped and asked a few people who were working on a South Central Bell panel in the middle of Paris Avenue if they had seen any police officers, in particular, any Levee Board police officers as they had been patrolling the area since the hurricane. When the workers told her that they had not seen any police officers, Ms. Horvath drove to a spot where she normally saw a police officer, but no one was there. She then returned home and called the company which had previously provided security; she was told to call 911. Finally, Ms. Horvath called the 911 emergency number and reported *871 that someone had entered her neighbor’s home but had not come back out. Within a few minutes, police officers arrived. Ms. Horvath saw the officers walk out of the yard with the defendant in handcuffs.
Ms. Horvath testified at trial that the property which she saw the defendant enter was owned by George and Cindy Wallace. She further testified that she had given the 911 operator a description of the defendant and his clothing. She stated that he was wearing blue jean shorts, had a tattoo on his leg, and had his hair in a long pony tail. She testified that she had also spoken with the police officers at the scene. She had explained to them that she had not called 911 immediately because she believed that the police were shorthanded and that it was not necessarily appropriate to contact the police on an emergency basis for a looter.
| .¡Officer David Finneman testified at trial that he was assigned to the Third District on June 17, 2006. In the morning, he and his partner Bryan Rice were dispatched to Paris Avenue on a call of a possible burglary in progress. The dispatcher provided a description of an unknown white male wearing blue shorts and no shirt who had been seen entering a house. Upon arriving at the location, the two officers observed a black bicycle on the side of the house near a gate; a similar bicycle had been reported being ridden by the suspect. ' The officers entered the yard through the open gate and saw that the sliding glass door in the back of the house was open. They then entered the house and began moving room by room looking for the suspect. When they reached one of the bedrooms, they saw the defendant rummaging through the drawers of an ar-moire. The defendant was handcuffed, formally arrested, and advised of his rights. When he was in the back of the police car, the defendant told the officers that they had him “good for breaking and entering.” In a search of the defendant incidental to the arrest, the officers found an Elgin watch and a letter opener in his right front pocket. Officer Finneman testified that the defendant admitted taking these items from the residence.
During cross-examination, Officer Finneman stated that the house in which the defendant was found was wrecked by the Katrina flood waters and was unoccupied. There were no signs of forcible entry into the house, but instead it appeared that entry had been made through the sliding glass door. When asked if it appeared that the defendant had caused any damage to the house, Officer Finneman explained that-there were all types of damage to the-house from the flooding.
^Officer Bryan Rice also testified at trial. His recitation of the events closely tracked that of his partner, Officer Finne-man. However, he provided the additional fact that Ms. Horvath identified the defendant on the scene as the man she saw entering her neighbor’s property.
The final witness at the trial was Ms. Cynthia Wallace, the owner of 6224 Paris Avenue, who stated that, on June 17, 2006, she was residing in Memphis because flood damage following Hurricane Katrina had made her Paris Avenue home unlivable. She testified that she had not yet begun repairs to her.home in June and that she had not given the defendant or anyone else permission to be on the property. Ms. Wallace identified the Elgin pocket watch seized from the defendant as her grandfather’s watch.
Ms. Wallace was questioned about the level of security at her home. She stated that the wooden doors in the front and at the carport were locked. However, due to damage from flood waters, the locking mechanism on the sliding glass door in the *872 back no longer functioned, and therefore it could not be locked.
The defense presented no witnesses at trial.
ERRORS PATENT
A review of the record for errors patent reveals that there are none.
DISCUSSION
In his sole assignment of error, the defendant avers that the State presented insufficient evidence to prove one of the elements of the offense beyond a reasonable doubt and, therefore, the trial court erred when it denied his motion for judgment of acquittal.
| sThe Louisiana Supreme Court set forth the standard for evaluating a claim of insufficient evidence in State v. Brown, 2003-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18:
When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657 (citing State v. Captville, 448 So.2d 676, 678 (La.1984)).
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” Neal, 796 So.2d at 657. Ultimately, all evidence, both direct and circumstantial must be sufficient under Jackson to prove guilt beyond a reasonable doubt to a rational jury. Id. (citing State v. Rosiere, 488 So.2d 965, 968 (La.1986)).
See also State v. Batiste, 06-0875 (La.App. 4 Cir. 12/20/06), 947 So.2d 810
The defendant was convicted of attempted looting, a violation of La. R.S. 14:27(62.5). The crime of looting is defined in La. R.S. 14:62.5 as follows:
Looting is the intentional entry by a person without authorization into any dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person, or any structure belonging to another and used in whole or in part as a place of business, or any vehicle, watercraft, building, plant, establishment, or other structure, movable or immovable, in which normal security of property is not present by virtue of a hurricane, flood, fire, act of God, or force majeure of any kind, or by virtue of a riot, mob, or other human agency, and the obtaining or exerting control over or damaging or removing property of the owner.
Attempt requires the specific intent to commit a crime and the commission or omission of an act toward accomplishing that object. La. R.S. 14:27. Therefore, to | Bprove that the defendant committed the offense of attempted looting, the State had to present evidence beyond a reasonable doubt that (1) he attempted to enter without authorization into a structure belonging to another, (2) in which normal security of property was not present because of hurricane, flood, fire, act of God, or force majeure of any kind, and (3) obtained or exerted control over or damaged or removed property of the owner.
In his motion for post verdict judgment of acquittal, the defendant made the spe *873 cific allegation that the evidence was not sufficient to prove that “normal security of property was not present by virtue of a hurricane.” He made no allegation that the State failed to prove that he entered the property of Ms. Wallace without authorization and removed, or attempted to remove, her property. Instead, in his written motion and in his counsel’s oral argument to the trial court, he contended that the element of lack of normal security was not proven. Counsel noted that the offense occurred ten months after Hurricane Katrina and that the testimony of Ms. Horvath showed that the police responded to her 911 call within minutes. Counsel suggested that the State’s theory of the offense was that “looting goes on forever,” but that the offense actually is limited to situations “when law and order breaks down and the government authorities have no control.” Defense counsel provided as an example of looting “people on TV running into stores and things like that.” Counsel did not suggest that no crime had been committed by his client, instead suggesting that, once security has been restored, the crime is burglary, not looting.
The State responds to the defense argument in two ways. First, the State contends that, merely because one person in the neighborhood had returned home, did not mean that the area where the Wallace home was located was not still |7severely impacted by the widespread flooding which followed Hurricane Katrina. The State notes that Ms. Wallace testified that her sliding glass door could not be secured because of damage from the flooding; thus the State argues that the “normal security of property” element was met. Next, the State argues in its brief that there was sufficient evidence to show that the governmental security was not normal at the time of the crime, even though this was ten months after Hurricane Katrina. In support of this position, the State relies upon the testimony of Ms. Horvath that she did not initially call 911 because she believed that the New Orleans Police Department did not have sufficient personnel to respond to property crimes. The State characterizes this as a “lower expectation of protection services.”
As the State notes, Ms. Horvath attempted to contact both a Levee Board police officer and her former private security company before she called 911. While this might arise from her perception of the lack of available normal police protection, her knowledge of the conditions of the neighborhood in which she had resided since October 2005 shows circumstantially that security had not returned to normal following the hurricane.
Furthermore, in State v. Lopez, 2007-0701 (La.App. 4 Cir. 11/7/07), 971 So.2d 416, this Court found that the evidence was sufficient to convict the defendants of looting under facts very similar to the instant case. The victim in Lopez testified that her home was flooded following Hurricane Katrina. Her upstairs had not been damaged and contained furniture as well as clothing and personal items. She visited the house daily, closing and tying the door shut in the evening. One day in February 2006 she arrived at the house, heard people upstairs, went to her car, and called 911. The police responded shortly thereafter and found the defendants | sinside. The victim later found personal items had been moved downstairs from her bedroom; her bedroom had been ransacked. In rejecting the argument that the evidence was insufficient to convict the defendants of looting, this Court stated:
In the present case, Ms. Ndang testified that her house had been gutted as result of damage from Hurricane Katrina. She stated that she would tie the front door closed because the door could *874 not be locked in the normal manner due to damage from the hurricane ... Both defendants attempted to flee when they saw the police officers. Defendants admitted that they were in the house. They both stated that they entered the house after waiting for their boss to return. Additionally, Ms. Ndang and Officer McGhee testified that the upstairs was ransacked and items were displaced. Ms. Ndang testified that two items which had been upstairs, her coin purse and a bottle of perfume, were found downstairs. Such testimony was sufficient to prove that the defendants entered Ms. Ndang’s home which lacked normal security due to Hurricane Katrina and exerted control over and removal of Ms. Ndang’s property. The State met its burden of proving that the defendants were guilty of looting. [Emphasis added.]
Lopez, p. 6, 971 So.2d at 420. The court did not find that the crime of looting had not occurred simply because the victim was able to summon the police immediately by calling 911. Instead, the court clearly found that the element of “normal security of property” referred to the condition of the property in particular.
Here, the defendant was found in the victim’s home, which could not be secured due to flood water having damaged the locking mechanism on her sliding glass door. The victim testified that she had not yet been able to find anyone to fix the glass door. Viewing this evidence, as well as the evidence that the defendant was found in the house with the victim’s property in his pocket, in the light most favorable to the State, it was sufficient for the jury to find the defendant guilty of the crime of attempted looting. Therefore, this assignment of error lacks merit.
laDECREE
Accordingly, for the reasons set forth above, the defendant’s conviction and sentence are affirmed.
AFFIRMED.