956 So.2d 65 (2007)
STATE of Louisiana
v.
John BROWNING.
No. 06-KA-929.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 2007.
Rehearing Denied May 7, 2007.
*68 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Andrea F. Long, Ken J. Dohre, James W. Adair, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff Appellee.
Juan C. Labadie, Gretna, Louisiana, for Defendant/Appellant.
Panel composed of Judges SUSAN M. CHEHARDY, WALTER J. ROTHSCHILD, and GREG G. GUIDRY.
WALTER J. ROTHSCHILD, Judge.
On November 16, 2005, the Jefferson Parish District Attorney filed a bill of information charging the defendant, John Browning, with looting after a declared state of emergency, in violation of LSA-R.S. 14:62.5(C). On December 9, 2005, the defendant filed a motion to waive his presence at arraignment, which the trial court granted. On December 13, 2005, a plea of not guilty was entered for the defendant in absentia. On May 19, 2006, the defendant filed a motion to quash the bill of information alleging that the bill failed to charge an offense punishable under a valid statute. The trial court subsequently denied the motion to quash. On the day of trial, May 23, 2006, the defendant made a request to waive his right to a jury trial, but the trial court denied this request.
After trial, a twelve-member jury found the defendant guilty of attempted looting after a declared state of emergency. The defendant orally moved for a post-verdict judgment of acquittal, which the trial court denied. In addition, the defendant filed motions for new trial and suspension of sentence, both of which were subsequently denied. On June 9, 2006, the defendant was sentenced to two years at hard labor and ordered to pay a fine of $2500. The defendant takes this timely appeal.
FACTS
Deputies Kirk Zeagler and Todd Giacona of the Jefferson Parish Sheriff's Office testified that they responded to a 911 looting call at New Orleans Audio Video located at 5600 Citrus Boulevard, on September 11, 2005. When they arrived at New Orleans Audio Video approximately five minutes later, they obtained entry to the damaged building through a hole in the wall. Deputy Giacona testified that he saw no other way in or out of the building except the hole in the wall. Deputy Zeagler testified that it was not easy to gain entry into the building's storage room, because he and Deputy Giacona had to climb over a pile of debris that was adjacent to the hole in the wall. On top of the pile of debris, not mixed in, was a 42-inch flat screen television that was out of its box. All of the other televisions were in boxes and stacked on shelves in the storage room.
According to Deputy Zeagler, after they saw the television, they checked the rest of the building and found the defendant hiding in the corner of the storeroom behind some debris. After the defendant was removed *69 from the building, arrested for looting, and placed in the police car, Deputy Zeagler and his partner searched the building. No one else was found in the building. On cross-examination, Deputy Zeagler identified his police report. He admitted that in his report, he stated that he saw the 42-inch television when he reentered the building after the defendant was taken outside. He also admitted that he did not know where the television was originally placed. Neither deputy saw the defendant touch or move the television.
Richard Savoie, the owner of New Orleans Audio Video, testified that prior to Hurricane Katrina, his store had full alarms and video. The building that housed the business was damaged during the hurricane. Savoie stored 13 to 42 inch televisions in boxes and on shelves at that store. He described the 42-inch flat panel televisions as four inches thick and weighing 75 to 80 pounds, which made them easy for him to move alone. Neither Savoie nor his employees authorized the defendant to enter the building, and the defendant was not authorized to take anything from the store. Savoie admitted that he did not know who was at the site from the time of the hurricane until September 11, 2005. However, only his employees were authorized to enter the building in order to secure it.
Stephanie Jovic, the defendant's girlfriend, testified that she and the defendant lived together in River Ridge before evacuating to Florida due to Hurricane Katrina. They returned to the area on September 8, 2005 to retrieve their possessions, and they intended to return to Florida on September 11, 2005. Jovic and the defendant were together until noon on September 11, 2005, when the defendant left to get a pizza from the only open pizzeria, which was on the Westbank. After Jovic learned that the defendant was arrested at 4:00 p.m., she attempted to retrieve the defendant's truck and found it in a parking lot beside New Orleans Audio Video. A few days later, she returned and took photographs of the area, while accompanied by the defendant and his father. Two of the photographs taken of the exterior of the damaged building depicted the defendant's sunglasses and hat, which the defendant wore on the date of the incident but were not in his possession when he was released from jail.
At trial, the State introduced into evidence a copy of Proclamation No. 48KBB2005 signed by the Governor of Louisiana. The proclamation declared a state of emergency as a result of Hurricane Katrina "from Friday, August 26, 2005, through Sunday, September 25, 2005, unless terminated sooner."
DISCUSSION
In his first assignment of error, the defendant asserts that the trial court committed legal error in denying his motion to quash. Prior to trial, the defendant filed a motion to quash the bill of information alleging that, pursuant to LSA-C.Cr.P. art. 532(1), the bill failed to charge an offense punishable under a valid statute. In addition, the defendant alleged that, pursuant to LSA-C.Cr.P. art. 532(5), there was a ground for quashing the indictment under LSA-C.Cr.P. art. 485, because the police report standing as the bill of particulars and the bill of information showed that no crime had been committed. Specifically, the defendant alleged that there was no evidence in the police report establishing that he obtained, exerted control over, damaged or removed the owner's property  an essential element of the charged crime of looting.
At the hearing, after listening to argument by the defense and the State, the trial judge denied the motion to quash based on State v. Mulvihill, 03-691 (La. App. 5 Cir. 10/28/03), 860 So.2d 266, finding *70 that it presented an analogous set of circumstances to the defendant's case. The trial judge stated that in State v. Mulvihill, this Court found that in a circumstantial case based on a police report, the question of whether an essential element of the offense had been proven was a question for the jury, and did not provide grounds to quash.
On appeal, the defendant argues that the trial court erred in denying his motion to quash based on State v. Mulvihill. He contends that the holding of the Louisiana Supreme Court in State v. Legendre, 362 So.2d 570 (La.1978), that there should not be an indictment for a serious offense brought upon an allegation of fact which cannot conceivably satisfy an essential element of the crime, is correct and applies to the instant case. The State responds that the trial court properly denied the defendant's motion to quash, because the defendant incorrectly used the motion to quash to raise a sufficiency argument on a factual matter that should be decided by the fact-finder on the merits at trial.
LSA-C.Cr.P. art. 532(1) and (5) provide that a defendant can base a motion to quash on the grounds that the indictment has failed to charge an offense which is punishable under a valid statute and the bill of particulars has shown a ground for quashing the indictment under Article 485.
LSA-C.Cr.P. art. 485 states in pertinent part:
[i]f it appears from the bill of particulars . . . together with any particulars appearing in the indictment, that the offense charged in the indictment was not committed, or that the defendant did not commit it, or that there is a ground for quashing the indictment, . . . the court . . . on motion of the defendant shall, order that the indictment be quashed unless the defect is cured."
A motion to quash is a mechanism by which pre-trial pleas that do not go to the merits are urged. State v. Jordan, 06-187 (La.App. 5 Cir. 9/26/06), 938 So.2d 805, 807. The question of factual guilt or innocence of the charged offense is not raised by a motion to quash. Id. Fact-intensive inquiries regarding the sufficiency of the evidence and merits of the case are not properly raised by a motion to quash; rather they should be decided on the evidence at trial. State v. Billard, 03-319 (La.App. 5 Cir. 7/29/03), 852 So.2d 1069, writ denied, 03-2437 (La.2/6/04), 865 So.2d 739.
In the present case, the defendant argues that the holding of State v. Legendre, not State v. Mulvihill, applies. In State v. Mulvihill, the defendant was charged with operating a vehicle while intoxicated, third offense, in violation of LSA-R.S. 14:98. The State appealed the trial court's grant of the defendant's motion to quash. The trial court granted the motion, because the State was unable to provide a response to whether the vehicle was in gear when the defendant was found intoxicated and asleep in the driver's seat of the vehicle while the engine was running. This Court found that the trial court erred in granting the motion to quash, because the determination of whether the defendant was operating the vehicle was a factual matter related to the merits of the case and a question for trial.
In State v. Legendre, the defendant was charged with committing a battery with a dangerous weapon. In response to the defendant's bill of particulars, the State responded that the dangerous weapon used by the defendant was a concrete parking lot. The defendant filed a motion to quash alleging that the aggravated battery was not committed with a dangerous weapon. The trial court denied the motion to quash finding that the question of *71 whether a dangerous weapon was involved was a question of fact to be decided by the jury. The Louisiana Supreme Court reversed, finding that a parking lot was not a dangerous weapon and thus, the State had not charged a valid offense. The court noted that a defective indictment and its invalidity may be ruled on in a motion to quash when based on the ground that the indictment failed to charge an offense which is punishable under a valid statute.
In the present case, the defendant alleged in his motion to quash that the indictment failed to charge an offense that is punishable under a valid statute. Thus, he asserts that the holding of State v. Legendre is applicable. We disagree.
The defendant has not shown that the indictment failed to charge an offense that is punishable under a valid statute. In addition, the defendant has not shown a ground for quashing the indictment with the police report standing as the bill of particulars. Rather, the defendant's claim that the State had not and would not be able to provide sufficient proof that he obtained, exerted control over, damaged, or removed the property of the owner is a fact-intensive matter related to the sufficiency of the evidence and the merits of the case, and, therefore, is not properly raised by a motion to quash. Whether the State would have been able to prove this essential element of the crime was a question of fact for the jury to decide on the merits at trial.
Considering the evidence before us, along with the applicable law, we find that the trial court did not err in denying the motion to quash. Thus, this assignment of error is without merit.
In his second assignment of error, the defendant contends that the trial court committed legal error in denying his motion to waive the jury, in light of the custom in this jurisdiction allowing defendants to waive a jury at any time before the commencement of trial and, specifically, in light of the fact that the record does not show that the defendant was ever advised that he had a right to waive the jury.
On the day of trial, prior to the examination of the first prospective juror but after the trial court had given instructions to the jury venire, the defendant decided to waive his right to a jury trial. The defendant argued that since voir dire had not commenced and no juror had been empaneled, he had the right to waive a jury trial. The trial court informed the defendant that it was too late, because he had not filed his request to waive his right to a jury trial within the statutory time period.
The defendant claims for the first time on appeal that he was not advised that he had the right to waive a jury trial. In addition, he argues that the trial court denied his jury trial waiver without due process and in a prejudicial fashion. The defendant claims that it is not the local customary practice to require a defendant to waive the right to a jury trial by motion within the statutory time delays for filing regular motions. Rather, it is customarily done by a verbal assertion with the standing permission of the court, at any time before trial has commenced. He notes that there is no federal constitutional right not to be tried by a jury except when a fair jury trial is impossible or unlikely, as in this looting case in post-Katrina Jefferson Parish.
The State argues that the defendant is raising the trial court's failure to advise him of his right to waive a jury trial for the first time on appeal. In addition, the State argues that the defendant did not move to waive his right to a jury trial until after the jury venire had been brought into the courtroom on the day of trial, which was not within the statutory period; therefore, *72 the trial court had the authority to deny the waiver. The State further claims that the defendant has not shown that he could not receive a fair trial, did not move for a change in venue, and did not use all of his peremptory challenges during jury selection. In addition, the State claims that any prior customary practice in the courts is outside the scope of the appellate record and does not equate with statutory authority and jurisprudential precedent.
First, as the State notes, the defendant claims for the first time on appeal that the trial court failed to advise him of his right to waive a jury trial. In order to preserve the right to seek appellate review of an alleged trial court error, the party alleging the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. LSA-C.Cr.P. art. 841. State v. Gaal, 01-376 (La.App. 5 Cir. 10/17/01), 800 So.2d 938, 949, writ denied, 02-2335 (La.10/3/03), 855 So.2d 294. The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity, allowing him the opportunity to make the proper ruling and correct any claimed prejudice to the defendant. Id. A defendant is limited to the grounds for objection that he articulated in the trial court, and a new basis for the objection may not be raised for the first time on appeal. State v. Taylor, 04-346 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 594; State v. Torregano, 03-1335 (La. App. 5 Cir. 5/11/04), 875 So.2d 842, 846.
Since the defendant did not raise the trial court's failure to advise him of his right to waive a jury trial as a basis for his objection, this argument is not properly before us for review.
In the trial court, the defendant did argue that he had the right to waive a jury since no jurors had yet been empaneled. Accordingly, we address the issue of whether the trial judge abused his discretion in denying the defendant's request to waive his right to a jury trial after the requisite statutory period elapsed.
The right of an accused to a trial by jury is guaranteed by LSA-Const. Art. 1, § 17 and by the Sixth Amendment to the United States Constitution. A defendant may waive his right to a jury trial and choose to be tried by the judge. LSA-C.Cr.P. art. 780 provides in pertinent part:
A. A defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial by jury and elect to be tried by the judge. At the time of arraignment, the defendant in such cases shall be informed by the court of his right to waive trial by jury.
B. The defendant shall exercise his right to waive trial by jury in accordance with the time limits set forth in Article 521. However, with permission of the court, he may exercise his right to waive trial by jury at any time prior to the commencement of trial.
LSA-C.Cr.P. art. 521 states:
Pretrial motions shall be made or filed within fifteen days after arraignment, unless a different time is provided by law or fixed by the court at arraignment upon a showing of good cause why fifteen days is inadequate.
Upon written motion at any time and a showing of good cause, the court shall allow additional time to file pretrial motions.
A waiver of the right to trial by jury must be express and voluntary, and the record must show that it was knowingly and intelligently made. State v. Singleton, 05-622 (La.App. 5 Cir. 1/31/06), 922 So.2d 647, 653. Generally, a waiver of the right to a jury trial is entered at *73 arraignment. State v. Lokey, 04-616 (La. App. 5 Cir. 11/30/04), 889 So.2d 1151, 1154, writ denied, 04-3195 (La.5/6/05), 901 So.2d 1093. However, the trial court may accept a waiver of the right to a jury trial at any time prior to the commencement of trial. Id. "A jury trial commences when the first prospective juror is called for examination." LSA-C.Cr.P. art. 761.
In the present case, there is no indication in the record nor does the defendant claim that he exercised his right to waive his right to a jury trial at his arraignment or in the statutorily provided 15 days following his arraignment. In addition, the defendant makes no showing that there was a different time period fixed by the court, upon a written motion asserting good cause why 15 days was inadequate for him to file a motion to waive a jury trial. Instead, the defendant suggests that it is a tradition or a standing custom of the court to give permission to waive the right to a jury trial at any time before trial has commenced. However, perceived custom or tradition does not control.
In this case, the defendant did not move to waive his right to a jury trial until after the jury venire had been seated in the courtroom and given instructions by the trial court. The trial court denied the defendant's motion finding that it was too late for the defendant to waive his right to a jury trial after the trial court addressed the jury as a whole, but before the first prospective juror was called for examination. Although the defendant argues that he is permitted to waive a trial by jury at any time prior to commencement of the trial, LSA-C.Cr.P. art. 780(B) is clear that waiver of a trial by jury may be entered after the statutory time limits only with permission of the court. Such permission was not granted in this case.
The jury venire was already in the courtroom and given preliminary instructions when the defendant moved to waive his right to a jury trial. Considering the record before us, we cannot say that the trial judge abused his discretion when he denied defendant's request to waive a jury trial just before voir dire began.[1] Accordingly, this assignment of error is without merit.
In his third assignment of error, the defendant asserts that his conviction must be overturned, because a rational trier of fact could not have concluded beyond a reasonable doubt that the State proved every element of the offense or that every reasonable hypothesis of innocence had been excluded. Specifically, the defendant claims that the State did not prove that he exerted control over, damaged, or removed the property of the owner. He claims that the testimony of the business' owner provided reasonable doubt regarding whether or not he moved the television, because other unauthorized persons could have been in the building since the storm. In addition, the defendant argues that the State did not prove that the state of emergency declared by the Governor on August 26, 2005, did not terminate before September 25, 2005, because the State did not present evidence of any subsequent declarations by the Governor to prove that the state of emergency lasted through September 25, 2005. The State responds that it presented sufficient evidence to establish each element of the charged offense.
*74 The standard of review for determining the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Harrell, 01-841 (La. App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019. "Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts." State v. Williams, 05-59 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 833. "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438. LSA-R.S. 15:438 does not establish a stricter standard of review than the more general rational juror's reasonable doubt formula; instead it serves as a helpful evidentiary guide for the jurors when evaluating circumstantial evidence. State v. Spears, 05-964 (La.4/4/06), 929 So.2d 1219, 1222.
The trier of fact can accept or reject, in whole or in part, the testimony of any witness. State v. Baker, 01-1397 (La. App. 5 Cir. 4/30/02), 816 So.2d 363, 365. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law. Id. An appellate court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events. State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83.
In the present case, the defendant was charged with violating LSA-R.S. 14:62.5, looting during a declared state of emergency. He was convicted of attempted looting during a declared state of emergency. Looting is defined in LSA-R.S. 14:62.5(A) as:
the intentional entry by a person without authorization into any dwelling or other structure belonging to another and used in whole or in part as. . . . a place of business,. . . . in which normal security of property is not present by virtue of a hurricane, flood, fire, act of God, or force majeure of any kind, . . . and the obtaining or exerting control over or damaging or removing property of the owner.
LSA-R.S. 14:62.5(C) states that it is a crime to "loot [ ] during the existence of a state of emergency, which has been declared pursuant to law by the governor. . . ., when the defendant knew or should have known that a declaration of emergency existed. . . . "[2]
LSA-R.S. 14:27(A) states:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
In order to convict for an attempted offense, there must be sufficient proof that the defendant actually desired *75 to cause the proscribed criminal consequences to follow his act or failure to act, and that the defendant committed or omitted an act for the purpose and tending directly toward the accomplishing of his objective. State v. Cheatham, 38,413 (La. App. 2 Cir. 6/23/04), 877 So.2d 164, 170, writ denied, 04-2224 (La.6/24/05), 904 So.2d 717. Specific intent is a state of mind that need not be proven as a fact, but may be inferred from the circumstances and action of the accused. Id. at 171.
Therefore, in order to convict a defendant of attempted looting during a declared emergency, the State must prove that the defendant attempted or perpetrated the act of (1) intentionally entering a structure containing a business, (2) lacking normal security because of a hurricane, flood, act of God, or force majeure of any kind, (3) during a declared state of emergency that the defendant knew or should have known existed, and (4) obtaining, exerting control over, damaging or removing property of the owner.
In the present case, the defendant claims that the State failed to prove that he attempted to obtain, exert control over, damage or remove property of the owner. We disagree. Savoie testified that he stored the televisions in the storeroom in their boxes on shelves. Although Savoie admitted that other unauthorized persons could have entered the building after the hurricane, the only entry into the damaged building was through a hole in the wall and the deputies stated that it was not easy to gain entry due to debris adjacent to the hole in the wall. Further, Deputies Zeagler and Giacona testified that they responded to the looting call within five minutes and the defendant was the only person found in the building. Also, the defendant was hiding in the corner of the storeroom behind some debris.
In addition, the television in question was found out of its box on top of the debris pile, not mixed in, and was adjacent to the hole in the wall through which ingress and egress had to be made. It was the only television that was not in its box or properly stacked. While neither deputy saw the defendant touch or move the television, no one else was found in the building.
The defendant contends that the photographs taken by its sole witness, Ms. Jovic, suggests that the defendant did not enter the building; instead, a struggle took place between the defendant and the police outside the building where the defendant's sunglasses and hat were found. However, the jury apparently chose to believe the officers that the defendant was found inside the building.
Based upon the evidence, the jury could have rejected the defendant's argument that the employees of the business or looters had previously moved the television, and reasonably concluded that the defendant had moved the television close to the only exit before he was found by the police.
The defendant further argues that the State failed to prove that a state of emergency existed at the time the offense was committed. We find this argument unpersuasive. The State introduced into the record a copy of Proclamation No. 48KBB2005, signed by the Governor of Louisiana, which declared a state of emergency from August 26, 2005 through September 25, 2005, unless terminated sooner. Evidence of subsequent declarations, as suggested by the defense, would not have proven that the initial declaration was not terminated before September 25, 2005, since the initial declaration could have been terminated before the final date and another state of emergency could have been subsequently declared. There is no *76 evidence that the declared state of emergency was terminated prior to the date of the offense, September 11, 2005. Based on the evidence, we find that the State met its burden of proof as required by the statute when it introduced into evidence the proclamation showing the dates that the state of emergency existed, which included September 11, 2005, the date of the offense.
Considering the entire record before us, we conclude that the evidence was sufficient for a rational trier of fact to conclude that the State proved the required elements of attempted looting during a declared state of emergency beyond a reasonable doubt. Accordingly, this assignment of error is without merit.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990). No errors requiring corrective action were noted.
DECREE
For the reasons set forth above, we affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] We note that after the jury's verdict was rendered, the defendant moved for a post-verdict judgment of acquittal, which was denied by the trial court. We further note that the defendant filed a motion for new trial, arguing that the verdict was contrary to the law and evidence, but this motion was denied by the trial court as well.
[2] LSA-R.S. 14:62.5(C) was later amended by Acts 2006, No. 165, § 1 to delete "when the defendant knew or should have known that a declaration of emergency existed."