STEPHEN J. WINDHORST, Judge.
UThe defendant, Trent Lyons, was convicted of second degree murder of Wilbert Decou in violation of La. R.S. 14:30.1. After the denial of his motion for new trial, defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Defendant’s timely appeal followed.

FACTS

On October 18, 2011, Wilbert Decou and defendant engaged in an altercation stem *38 ming from an incident between defendant and Desmond Parker, the son of Decou’s girlfriend, which had occurred on the previous evening.
On the date of the incident, defendant approached Decou and asked him if he wanted to fight. Defendant then went back in the direction from which he came. Decou went inside his house, and then returned wearing gloves and appeared prepared for a fight. Decou had cut the fingers off of his gloves. Decou was also wearing a shirt.
Defendant returned, told Decou to come on and fight and stated that he fights for a living. Decou put his arms up in a defensive position, and then, Decou and defendant began throwing fists at each other. The fight was witnessed by two men, Warren Mosley and Otis Gary, and also by Desmond Parker. According to Gary, not less than four or five punches passed between defendant and Decou.
During the three minute fight, Decou caused defendant to move backwards. Once defendant realized that Decou was really fighting back and was unafraid, ^defendant pulled out a military knife with a seven to eight inch blade. When defendant pulled the knife, Decou ran towards the street. After it appeared that defendant was gaining ground, Decou turned around. Decou raised his hands in an unsuccessful attempt to block the knife or in an attempt to swing at defendant. As soon as defendant caught up with Decou, he jammed Decou under his arm with a knife, and Decou dropped down to his knees in the street. According to Gary, defendant said, “I told you I was an ‘f-ing’ killer, now look you see,” while standing over Decou. According to Mosley, after the defendant stabbed Decou, he stated that this is what he did for a living.
Parker testified that he thought Decou was knocked out and had only lost the fight. After he walked towards Decou to help him up, he saw a pool of blood coming from Decou’s side. Parker removed his own shirt and used it to put pressure on Decou’s wound to stop the bleeding. As Parker and a nurse from across the street performed CPR and attempted to revive Decou, Parker saw defendant running away. Defendant later returned to the scene, but then again left.
Thomas Evans, a forensic death investigator for the JPSO and a paramedic, was one of the responders to the scene. At trial, he testified that his responsibilities were to identify the body, notify the family, and locate and document any wounds, property, clothing, and evidence to relay to the pathologist. He noticed a penetrating wound to the deceased’s right chest. After searching the deceased’s clothing and body, he found a pocket knife and metal wrapped in electrical tape in the deceased’s right front pocket. The pocket knife was folded, closed, void of blood and was returned to the deceased’s family. Also, Evans removed cloth gloves, which were not weighted, from the deceased’s hands. In addition, the deceased was shirtless, and a shirt was found underneath the body.
|4The defense disputed Mr. Mosley and Mr. Gary’s version of events. Randon Brown testified at trial on behalf of the defense that Decou had been like a second father to him for 10 years, and he would see him every day. According to Brown, after the dispute between defendant, and Parker and his mother had been resolved, Decou said that he and defendant were going to fight every day and that he would “f* * * that n* * * * * up.” Then, Decou prepared to fight by putting on gloves, removing his shirt and switching his slippers for tennis shoes.
*39 After defendant pulled up in his driveway and exited his car, defendant and Decou began fighting in the middle of the street. Brown testified that he witnessed Decou pull the knife out of his back pocket, and that he, Brown, knew it was a knife because he saw the glare. When Decou pulled out the knife, defendant grabbed his arm and wrestled with him. Then, Decou was on the ground, and defendant walked away moving toward him. Brown testified that as defendant walked towards him, he saw that defendant did not have anything in his hand. He also saw that defendant had cuts on his arm and his eye was bleeding. Brown testified that he was telling the truth and was not testifying because he did not like Decou. Brown stated that he did not want to come forward at first because he was stuck in the middle and Decou was his family and a friend. He explained that he was testifying under subpoena and if he had a choice he would not have come.
The day after the incident, defendant accompanied by his sisters and girlfriend, met with an attorney located at Tulane Avenue and Broad Street. Defendant’s girlfriend, Cindy Armstead, testified that defendant’s arms were cut and swollen, and his face was swollen. She stated that the defendant did not have those marks before the fight. In her opinion, the wounds appeared to be stab wounds and appeared to be fresh, although she also admitted that there was scabbing. She further stated that defendant kept repeating that Decou had wanted | sto fight. After pictures of defendant were taken at the law office, he voluntarily turned himself into at the Jefferson Parish jailhouse and was booked with second, degree murder.
Autopsy results revealed that Decou died as a result of a single stab wound to the chest which resulted in lethal injury to his heart and pulmonary artery. The wound was consistent with a single-edged blade like a kitchen knife, and it was unable to be determined whether or not the blade was serrated. The stab wound was more than two inches in length and six inches in depth.

DISCUSSION

In his sole assignment of error, defendant argues that the trial court erred by denying defendant’s oral motion in limine to prevent the State from referring to the deceased as the “victim” throughout trial including the questioning of witnesses. Defendant argues that the use of “victim” in this case was prejudicial because he raised self-defense.
The State first responds that defendant’s claim is not properly before this Court because defendant failed to make a contemporaneous objection to the State’s use of the term “victim.” The State asserts that a contemporaneous objection was required in order to preserve the issue for appeal because defendant’s motion in limine was verbal and not a written motion. Second, the State argues that all matters pertaining to the conduct of the trial are within the sound discretion of the trial judge, and the trial court did not abuse its discretion by denying the motion in limine.
On the first day of trial, defense counsel made an oral motion in limine that both sides refer to Mr. Decou as “the deceased” and that the State not be permitted to refer to the Mr. Decou as “the victim.” The defense argued that referring to the deceased as a “victim” is a jury question as to whether or not defendant took the lfideceased’s life in self-defense. The defense asserted that whether or not the deceased was a victim is an opinion, and the attorneys are not permitted to give an opinion as to what occurred. After the State objected to the defense’s request, the defense further argued that referring to *40 the deceased as “the victim” is the same as calling defendant guilty and it is for the jury to come to a conclusion. In denying the defendant’s motion, the trial court gave the following reasons:
The Court is aware that in most criminal cases it’s generally accepted that a person who is injured or becomes deceased as a result of the alleged action of someone else is referred to as “a victim.” It’s no different than the State telling this jury that your client is a murderer or murdered someone, so the motion is denied, and your objection is noted for the record.
The defense requested in the alternative that the State refer to the deceased as “the alleged victim” instead of “the victim.” Defense counsel argued that in self-defense cases it is not a question of who committed the action but whether the action was in self-defense, which is a jury question. The court again denied defendant’s motion and gave the following reasons:
The Court instructs juries in every case that it is the burden of the State to prove all the elements of the crime charged beyond a reasonable doubt. The Court also instructs jurors that whatever the lawyers say to each other, to the Court, to the witnesses and to the jury, is not evidence.
After the court’s ruling, defense counsel noted his objection, and the court also noted defendant’s objection for the record. In addition, defense counsel stated his intention to move for a mistrial whenever the State first referred to the deceased as “a victim.” Although the court stated that defendant had a right to make any motions he chose, the record reflects that defendant did not move for a mistrial or further object to any particular reference to the deceased as “a victim” by the State.
First, the State raises a preliminary issue of whether defendant made a contemporaneous objection to the State’s reference to the deceased as “the victim.”
|7To preserve the right to seek appellate review of an alleged trial court error, the party alleging the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. La. C.Cr.P. art. 841; State v. Browning, 06-929 (La.App. 5 Cir. 4/11/07), 956 So.2d 65, 72. The purpose behind this rule is to put the trial judge on notice of an alleged irregularity, thereby allowing the trial judge the opportunity to make the proper ruling and correct any claimed prejudice to the party alleging the error. Browning, supra.
The record reflects that defense counsel objected to the trial court’s denial of his oral motion in limine requesting that the State not be permitted to refer to the deceased as “the victim.” However, defense counsel did not object to any of the State’s references to the deceased as “the victim” at trial. Nevertheless, we find that the defense’s objection to the trial court’s denial of his oral motion in limine put the trial judge on notice of the alleged irregularity, which allowed the trial judge the opportunity to make a proper ruling and correct any claimed prejudice. Thus, this issue was properly preserved for appellate review.
La.C.Cr.P. art. 771 condemns the use of remarks that are “irrelevant or immaterial and of such a nature that it might create prejudice against the defendant or the state, in the mind of the jury.” State v. Lewis, 367 So.2d 1155, 1158 (La.1979), overruled in part on other grounds, State v. Holden, 375 So.2d 1372 (La.1979) (citing La.C.Cr.P. art. 771). In Lewis, the defendant complained that the prosecutor’s reference to the complainant of a burglary as *41 “the victim” was improper because it had the effect of arousing the jury’s sympathies for the complainant. The Court found that using the terminology “the victim” did not fall into the categories of irrelevant and immaterial remarks which could prejudice the [¿jury against the defense as stated in La.C.Cr.P. art. 771. Id. See also State v. Williams, 615 So.2d 1009, 1015 (La.App. 1 Cir.1993), writ denied, 93-767 (La.1993), 619 So.2d 543 (the court found that the trial court did not err by denying the defendant’s pre-trial motion in limine in regard to any references to “murder” and “victim” during the trial and any error was harmless).
We find that using the terminology “the victim” to refer to the deceased does not fall into the category of irrelevant and immaterial remarks which could prejudice the jury. As explained by Dr. Garcia at trial, the manner of death was categorized as a homicide simply because it was a death of one human being at the hands of another. Accordingly, it appears that the use of the terminology “the victim” has no bearing on the validity of defendant’s justification of self-defense. See Lewis, supra.
Further, even if the trial court had erred by allowing the deceased to be referred to as “the victim,” we find that the error was harmless. The indictment charged defendant with the second degree murder of Mr. Decou, and the jury was fully aware of the charged offense and that Mr. Decou was the alleged victim. See Williams, supra. Also, the trial as a whole was conducted fairly and there was considerable evidence of defendant’s guilt. Several witnesses testified at trial that they observed the altercation between the deceased and defendant. Two witnesses, Mr. Mosely and Mr. Gary, testified to witnessing defendant chase the deceased down the street and stab him with a knife. Dr. Garcia testified that the deceased died as a result of a stab wound to the chest that perforated his lung, heart, and pulmonary artery. Therefore, even if the trial court erred in allowing the deceased to be referred to as “the victim” any error would be harmless. See State v. Olivieri, 03-563 (La.App. 5 Cir. 10/28/03), 860 So.2d 207, 214-15.
Defendant’s assignment of error has no merit.
lflWe have reviewed the record for errors patent, according to the mandates of La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and find the following which merits our attention.
The record reveals a conflict between the transcript and the “State of Louisiana Uniform Commitment Order,” which reflects the incorrect date of offense. The uniform commitment order reflects the date of the offense as “10/19/2011.” However, the record reflects that the correct date of offense was October 18, 2011. Where there is a conflict between the transcript and the minute entry, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, we remand this case for correction of the Uniform Commitment Order error regarding the date of offense. See State v. Long, 12-184 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142. In addition, we further direct the Clerk of Court to transmit the corrected commitment to the officer in charge of the institution to which defendant has been sentenced, as well as, to the legal department of the Louisiana Department of Public Safety and Corrections. See State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846.

CONCLUSION

For the reasons stated above, we affirm the defendant’s conviction and sentence *42 and remand this ease for corrections in compliance with this opinion. We further order that, in addition to the record copy, a separate copy of this opinion be delivered to the Clerk of Court for the Twenty-Fourth Judicial District Court for the Parish of Jefferson and to the legal department of the Louisiana Department of Public Safety and Corrections.
CONVICTION AND SENTENCE AFFIRMED AND REMANDED WITH INSTRUCTIONS.