STATE OF LOUISIANA

VERSUS

DON RAINES

NO. 24-KA-177

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 21-5980, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING

December 18, 2024

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Marc E. Johnson

**CONVICTION AFFIRMED;**
**ENHANCED SENTENCE AMENDED**
**AND AFFIRMED AS AMENDED;**
**REMANDED FOR CORRECTION OF**
**THE UNIFORM COMMITMENT ORDER;**
**REMANDED WITH FURTHER INSTRUCTIONS**
    **MEJ**
    **SMC**
    **JGG**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
     Honorable Paul D. Connick, Jr.
     Thomas J. Butler
     Monique D. Nolan
     Molly Love

COUNSEL FOR DEFENDANT/APPELLANT,
DON RAINES
     Holli A. Herrle-Castillo

**JOHNSON, J.**

Defendant/Appellant, Don Raines, appeals his conviction for conspiracy to introduce or possess contraband in a correctional center rendered in the 24th Judicial District Court, Division "E". For the following reasons, we affirm Defendant's conviction, amend his enhanced sentence and affirm the sentence as amended, and remand the matter with instructions.

## FACTS AND PROCEDURAL HISTORY

On January 3, 2022, the Jefferson Parish District Attorney filed a bill of information charging Defendant with conspiracy to introduce or possess contraband[1] in the Jefferson Parish Correctional Center on or between October 25, 2021 and November 1, 2021, in violation of "La. R.S. 14:26:402."[2,3] Defendant was arraigned on August 1, 2023, and entered a plea of not guilty. The case proceeded to trial before a six-person jury on September 20, 2023.

At trial, Detective Philip Blitch of the Jefferson Parish Sheriff's Office ("JPSO") testified that he formerly worked in the narcotics division. In October 2021, he participated in an investigation in the Jefferson Parish Correctional Center ("JPCC"), which ultimately resulted in the arrest of Defendant and Aaliyah Pryer.

Detective Blitch used the Securus system in the investigation. Securus stored an inmate's "PIN number ID," which inmates used when making a phone call. Through his investigation, Detective Blitch identified a jail call between Defendant and Pryer.[4] The call was discovered by searching for Defendant's name and PIN number. Detective Blitch testified that he was aware that other inmates

---

[1] The listed contraband was Buprenorphine (Suboxone).

[2] This citation format references both La. R.S. 14:26 and La. R.S. 14:402 as violations.

[3] The bill of information also listed Aaliyah Pryer as the co-conspirator to the violation of La. R.S. "14:26:402."

[4] Detective Blitch testified that the recorded call did not log the caller's name. He explained that, to his knowledge, this portion is left blank if the inmate chooses not to say a name when the inmate is initially set up with the Securus system.

24-KA-177                                             1

would sometimes use other's PIN numbers to make calls.[5] He explained that during the course of his investigation, he reviewed over 50 jail calls associated with Defendant's PIN and had no reason to expect that anyone other than Defendant was making the calls. Detective Blitch testified that he was able to identify the female on the call was Pryer by utilizing various databases. He was able to find a link between Defendant and Pryer in a previous report that had been conducted. Detective Blitch testified that all the calls made inside the correctional center were prefaced by an automated recording stating that the call may be monitored.

The jail call at issue was played for the jury. The State paused the call multiple times to ask Detective Blitch questions about what was said. During the call, Defendant told Pryer that he needed her to get the black phone and to give "one of those dope fiends" "100" for "20 Suboxone, 20 subs." Detective Blitch testified that "subs" was a name for Suboxone sublingual strips. Defendant told Pryer that "one of those dope fiends" would have the subs and to tell "Mall" that she needed 20 of the pills. Detective Blitch testified that he confirmed that "Mall" was a person and not a place.

Defendant then directed Pryer to go to the Dollar Store and get a birthday card "that had a lot of pop outs on them." He then stated that he would tell her how to put it behind "sh*t" to hide it and that she cannot let it show. Defendant then stated, "Do that for me Llah." Pryer replied "okay" to Defendant's directions. Detective Blitch testified that he did not hear Pryer decline any of Defendant's directions at any point during the call. Defendant told Pryer that he needed her to get this done "now" and as soon as possible. He stated that she would not have to worry about anything "out there" and that he would make them rich from "back

---

[5] Detective Blitch stated that Defendant was being housed in a "pod" or "annex" that housed anywhere from 15 to 30 inmates.

here." Defendant then directed Pryer to sign the birthday card so that it could look real. He instructed her to put a fake return address on the bottom of the envelope that she sends with the birthday card and to put the stamps on the top right. He told her to put her real address at the top of the envelope that she sends with pictures. Detective Blitch testified that he believed that Pryer intended to send Defendant a "legitimate envelope" with photographs in it. He stated that he believed that Defendant was instructing her to put her real information on this envelope, and false information on the envelope with the card in it, so that Defendant could establish which piece of mail contained the contraband.

Defendant asked Pryer if she would do what he asked of her, and she responded that she would. He informed her that he could make "300" off one of "them." Detective Blitch testified that he interpreted this to mean that Defendant could sell the Suboxone for $300 to other inmates. Defendant informed Pryer that, if she did what he asked her to do, he would pay the rent and she could relax. He instructed Pryer to start looking for the birthday cards and to make sure they had a lot of "pop outs." Pryer responded that she would go to Walgreens. Defendant told her to do what he asked, and he would make them rich.

Detective Blitch testified that he contacted Pryer. She was initially cooperative with the investigation and agreed to speak with him and other investigators. However, Pryer changed her mind and ultimately refused to meet with them. Pryer was later arrested, and a search incident to her arrest was conducted. One Suboxone sublingual strip "inside its packaging" and three cell phones were found inside Pryer's purse. Detective Blitch identified a pink iPhone that he believed had been personally used by Pryer. He then identified a black iPhone with pictures on the back that he knew to be Defendant's phone, which was

given to Pryer prior to Defendant's incarceration.[6]  He identified a flip phone that was in pretty bad shape.  He explained that he believed it was the phone referred to by Defendant as his "little black phone" in the jail call.  Detective Blitch testified that these types of phones were referred to as "trap phones" and were commonly used by individuals involved in narcotics trafficking.

Detective Blitch obtained a search warrant for the phones.  He photographed text message conversations that he discovered on the phones and submitted them into evidence.  Among the evidence was a photo of text messages on the pink cell phone that Detective Blitch believed belonged to Pryer.  The texts began on Monday, October 25, 2021 at 6:46 p.m.  He testified that the jail call took place a few hours earlier at approximately 4:30 p.m.  The first message said, "This Don girl."  The next message from Pryer said, "If you can get the subs tonight, I'll buy them.  Whatever she want for them.  I need 20."

Detective Blitch then testified to additional text messages between Pryer and the same individual who previously communicated with her on the pink cell phone.  The exchange involved the individual asking Pryer if she still wanted the Suboxones and Pryer responding affirmatively.  Subsequently, they discussed the price.  Detective Blitch identified a photograph of text messages from the flip phone.  The messages were sent on October 30, 2021.  He believed that Pryer was operating the phone and communicating with other individuals regarding narcotics transactions.

Detective Blitch identified a photograph of text messages from the black iPhone that he believed to belong to Defendant.  He testified that, in the text

---

[6] The State questioned Detective Blitch about anything he noticed that was significant about the iPhones.  He stated that he believed the pink iPhone's background screen was a photo of Defendant.  As to the black iPhone, he noticed the background screen photo of Defendant as well.  He testified that one of the phone cases was "collaged with photographs of individuals" and Defendant. He explained that he viewed a photograph of Defendant before seizing the cell phones and believed the photographs were consistent.

messages, Pryer was conversing with "Mall", and that was the person Defendant instructed Pryer to contact to obtain the Suboxone. He testified that Mall referred to Pryer as "Llah" in the text messages, which is a name he heard several times in some of the jail calls. In the text messages, Mall stated he was outside and stated "got that for you." Detective Blitch interpreted this to mean that he was bringing Pryer some narcotics. Detective Blitch then identified a photograph of text messages that stated "20", which was consistent with the 20 Suboxones Pryer was instructed to retrieve. Mall told Pryer to "Hit me with the brick" and referred to it as the "hard sh*t." Detective Blitch explained that was how people referred to heroin.

The Suboxone found in Pryer's purse was submitted to the crime lab for analysis. A stipulation was entered that, if the forensic scientist was called, he would testify consistent with his report that the substance was positive for Buprenorphine.[7] Based on the jail call, the arrest of Pryer, and the items recovered from her, Detective Blitch obtained an arrest warrant for Defendant.

At the conclusion of the trial, the six-person jury found Defendant guilty as charged. On September 25, 2023, the trial court sentenced Defendant to five years imprisonment with the Department of Corrections without benefit of parole, probation, or suspension of sentence. The sentence was ordered to run "consecutive with [D]efendant's prior sentence."

On December 14, 2023, the State filed a habitual offender bill of information, alleging that Defendant was a second-felony offender, having previously been convicted on November 4, 2021, of La. R.S. 40:967(A), "[p]ossession with intent to distribute Fentanyl," in case number 21-3044 in Division "F" of the 24th Judicial District Court. On March 1, 2024, the State filed a

---

[7] The trial court explained the stipulation to the jury and informed them that Buprenorphine was the clinical name for Suboxone.

subsequent habitual offender bill of information, alleging that Defendant was a second-felony offender, having previously been convicted on November 4, 2021, of La. R.S. 14:95.1, "Felon with a Firearm," in case number 21-3044 in Division "F" of the 24th Judicial District Court.  Also on March 1, 2024, defense counsel stated that Defendant wanted to stipulate to the habitual offender bill.

The State offered the stipulation that, if called to testify, the fingerprint expert would testify that Defendant, who was found guilty of conspiracy to introduce or possess contraband in a correctional center, was the same person who pleaded guilty to "felon in possession of a firearm under Case Number 21-3044." The trial court asked the State if Defendant had "any other record," and the State responded that Defendant had "a theft of goods from 2002, a drug charge from 2006, a theft charge from 2011, and he has a felon in possession of a firearm and a drug charge from 2021."  Defense counsel confirmed that Defendant was stipulating that he was one and the same person, and he had a prior conviction in "Division F, 21-3044."  The trial court stated it was vacating Defendant's original sentence.  The trial court then stated that it was finding Defendant "guilty of the multiple bill, double bill of information" and found that Defendant was "one and the same person who's got the prior conviction."  The trial court sentenced Defendant to five years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.  On March 5, 2024, Defendant filed a motion for appeal, which was granted by the trial court on March 7, 2024.  The instant appeal followed.

## ASSIGNMENT OF ERROR

On appeal, Defendant alleges there was insufficient evidence to uphold his conviction for conspiracy to introduce or possess contraband at a correctional

facility.

## LAW AND ANALYSIS

Before we address the merits of this appeal, we acknowledge that Defendant's motion for appeal is, in part, untimely.  Defendant was convicted on September 20, 2023 and sentenced on September 25, 2023.  The State filed a habitual offender bill on December 14, 2023.  On March 1, 2024, the State filed a subsequent habitual offender bill.  On the same date, there was a stipulation, and the trial court vacated the original sentence and resentenced defendant as a second-felony offender.  Defendant filed his motion for appeal on March 5, 2024, which challenges the trial verdict rendered on September 20, 2023, the sentence imposed on September 25, 2023, and the habitual offender adjudication and sentencing on March 1, 2024.  The motion for appeal was not filed within 30 days of the September 20, 2023 verdict, in accordance with the requirements of La. C.Cr.P. art. 914.  However, we will consider Defendant's appeal to avoid "further useless delay."  *See*, *State v. Gilbert*, 23-121 (La. App. 5 Cir. 11/8/23), 377 So.3d 378, 384, *writ denied*, 23-1640 (La. 5/29/24), 385 So.3d 704.  *See also*, *State v. Fair*, 15-434 (La. App. 5 Cir. 12/23/15), 182 So.3d 1238, 1240 n.1, *writ denied*, 16-185 (La. 2/3/17), 215 So.3d 688.

In his sole assignment of error, Defendant argues that the State failed to prove his identity and that he conspired with Pryer to commit the offense. Defendant avers that Detective Blitch's testimony regarding the cell phones and the photos of him and Pryer on the phones only proved that they were acquainted. Defendant argues that Detective Blitch identified him as the caller on the jail call based only on his PIN and testified that it was common for other inmates to use someone else's PIN.  He also points out that he testified that there were 30 or more inmates housed with him in his dorm.  Defendant points out that, although Pryer was found to be in possession of a single Suboxone sheet, the drug cannot be

attributed to him without establishing an "adequate connection" between him, the cell phones, and the jail calls. Defendant argues that because the evidence was circumstantial, the State was required to exclude any reasonable hypothesis of innocence, which in this matter included the possibility that another inmate could have used his PIN number to call Pryer.

The State responds that it set forth sufficient evidence to prove that Defendant was the individual who conspired with Pryer to introduce Suboxone into JPCC. The State also posits that it presented sufficient testimony and evidence to prove the elements of Defendant's conviction. As to Defendant's identity, the State argues that Detective Blitch testified he discovered the jail call between Defendant and Pryer using Defendant's PIN number, and he had no reason to believe that anyone other than Defendant used his PIN number to make the call. The State avers that one of the cell phones found in Pryer's purse at the time of her arrest was a flip phone, which appeared to be the phone Defendant referred to as his "little black phone." The State also points to Detective Blitch's testimony that the iPhones had background photos and photos on the case of Defendant and Pryer, further linking the pair.

As to the other elements of the conviction, the State asserts that the call between Defendant and Pryer, along with Detective Blitch's testimony, established an agreement between the two. The State argues that other elements of the offense were met through the evidence of the text messages on the cell phones. In the text messages, Pryer referred to herself as "Don girl" and "Llah." The State argues that Defendant referred to Pryer as "Llah" during the call. The State points out that Pryer had a Suboxone strip in her purse at the time of her arrest. The State avers that this proves that Pryer did an act in furtherance of the pair's objective to introduce Suboxone into JPCC. The State argues that the jury heard Detective Blitch's testimony and reviewed the evidence set forth by the State. The State

asserts that the jury's determination was rational under *Jackson*[8] and should not be re-evaluated on appeal. The State contends that Defendant's claim is without merit.

The question of sufficiency of the evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal pursuant to La. C.Cr.P. art. 821. *State v. Williams*, 20-46 (La. App. 5 Cir. 12/30/20), 308 So.3d 791, 816, *writ denied*, 21-316 (La. 5/25/21), 316 So.3d 2. In the instant matter, Defendant did not file such a motion; however, the failure to file a motion for post-verdict judgment of acquittal does not preclude appellate review of the sufficiency of the evidence. *See State v. Faciane*, 17-224 (La. App. 5 Cir. 11/15/17), 233 So.3d 195, 205, *writ denied*, 17-69 (La. 10/8/18), 253 So.3d 797.

In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct, circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Lane*, 20-181 (La. App. 5 Cir. 1/27/21), 310 So.3d 794, 804. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. *State v. Gatson*, 21-156 (La. App. 5 Cir. 12/29/21), 334 So.3d 1021, 1034. When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 provides, "[A]ssuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." *State v. Woods*, 23-41 (La. App. 5 Cir. 11/15/23), 376 So.3d 1144, 1155, *writ denied*, 23-1615 (La. 5/29/04), 385 So.3d 700. This is not a separate test from the *Jackson* standard but rather provides a helpful basis for

---

[8] *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

determining the existence of reasonable doubt.  *Id*.  The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events.  Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational trier of fact could not have found proof of guilt beyond a reasonable doubt.  *State v. King*, 22-371 (La. App. 5 Cir. 5/24/23), 365 So.3d 897, 907, *writ denied*, 23-790 (La. 1/17/24), 377 So.3d 242, *cert. denied*, 144 S.Ct. 2694 (2024).

The directive that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact's rational credibility calls, evidence weighing, and inference drawing.  *State v. Clifton*, 17-538 (La. App. 5 Cir. 5/23/18), 248 So.3d 691, 702.  This deference to the fact-finder does not permit a reviewing court to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence.  *State v. McKinney*, 20-19 (La. App. 5 Cir. 11/4/20), 304 So.3d 1097, 1102.  As a result, under the *Jackson* standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at the trial established guilt beyond a reasonable doubt but whether, upon review of the whole record, any rational trier of fact would have found guilt beyond a reasonable doubt.  *Id.* at 1103.

In making this determination, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence.  *Lane*, *supra*.  Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction.  *McKinney*, *supra*.

Encompassed within proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator.  Where the key issue is the

identification, the State is required to negate any reasonable probability of misidentification to carry its burden of proof. *State v. Smith*, 20-177 (La. App. 5 Cir. 4/28/21), 325 So.3d 482, 488, *writ denied*, 21-975 (La. 11/17/21), 327 So.3d 992. Identification by only one witness is sufficient to support a conviction. *Id.* In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a requisite factual finding. *Id.*

Defendant was convicted of conspiracy to introduce or possess contraband into a correctional facility. At the time the offense was committed,[9] La. R.S. 14:26(E) provided,

> Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.

At the time the offense was committed La. R.S. 14:402 provided, in pertinent part,

> E. It shall be unlawful to possess or to introduce or attempt to introduce into or upon the premises of any municipal or parish prison or jail or to take or send or attempt to take or send therefrom, or to give or to attempt to give to an inmate of any municipal or parish prison or jail, any of the following articles which are hereby declared to be contraband for the purpose of this Section, to wit:
>
> ***
> (5) Any narcotic or hypnotic or excitive drug or any drugs of whatever kind or nature, including nasal inhalators of any variety, sleeping pills or barbiturates of any variety that create or may create a hypnotic effect if taken internally, or any other controlled dangerous substance as defined in R.S. 40:961 et seq. The introduction by a person of any controlled dangerous substance as defined in R.S. 40:961 et seq., upon the grounds of any municipal or parish prison or jail shall constitute distribution of that controlled dangerous substance and shall be subject to the penalties provided in R.S. 40:961 et seq.

La. R.S. 40:964 lists Buprenorphine as a Schedule III controlled dangerous

---

[9] *See State v. Sugasti*, 01-3407 (La. 6/21/02), 820 So.2d 518, 520.

substance.

On appeal, Defendant does not argue that the State failed to prove any specified essential statutory element of La. R.S. 14:26 and La. R.S. 14:402. Rather, Defendant argues that the State failed to prove his identity as the person who conspired with Pryer to introduce drugs into JPCC.

We find that the State presented sufficient evidence to prove the identity of Defendant. The State introduced evidence of the jail call between Defendant and Pryer. Detective Blitch testified that he located the call between the two using Defendant's PIN number. While he explained that he was aware that inmates would use other inmates' PIN numbers, Detective Blitch testified that he reviewed over 50 jail calls associated with Defendant's PIN, and he had no reason to believe that anyone other than Defendant made the calls. The State also presented evidence of three cell phones that were found in Pryer's purse when she was arrested. Detective Blitch testified that photographs of Pryer and Defendant together were found on the background of one of the iPhones and a collage of their photos was on the cover of the phone. The other phone found in Pryer's purse was a flip phone that Detective Blitch testified was the phone that Defendant referenced as his "little black phone" on the jail call. Text messages from the cell phones were introduced into evidence. In one test message, Pryer referred to herself as "Don girl." In another message, the sender referred to Pryer as "Llah." During the recorded jail call, Defendant is heard referring to Pryer as "Llah."

Defendant argues that the evidence provided by the State did not exclude the hypothesis that someone else could have used his PIN number to make the call. The jury was presented with the State's evidence in this case, including Detective Blitch's testimony, the cell phones, and text messages. The jury also heard the jail call in question. This Court should not re-evaluate the credibility of a witness or re-weigh evidence. *See Lane*, *supra*. Accordingly, we conclude that a rational

trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found beyond a reasonable doubt that the evidence was sufficient to find that Defendant committed the offense under the standard set forth in *Jackson*.

Errors Patent Review

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990). The following errors require corrective action.

The trial court sentenced Defendant as a second-felony offender to five years at hard labor without the benefit of parole, probation, or suspension of sentence. The habitual offender sentencing minute entry and the Louisiana Uniform Commitment Order ("UCO") reflect the same restrictions. While La. R.S. 15:529.1(G) requires all enhanced sentences to be imposed without benefit of probation or suspension of sentence, it does not impose a parole restriction. Rather, when a defendant is sentenced as a habitual offender, it is the penalty provision of the underlying offense that imposes a parole restriction. *State v. Luckett*, 17-432 (La. App. 5 Cir. 12/27/17), 236 So.3d 1278, 1280. The underlying offense in the reference statute does not impose a parole restriction. *See* La. R.S. 14:26; La. R.S. 14:402; and La. R.S. 40:968(B). As such, we find Defendant's enhanced sentence should not have been imposed with a parole restriction.

When a sentencing error involves the imposition of restrictions beyond what the legislature has authorized in the sentencing statute, the Louisiana Supreme Court has ruled that the appellate courts should not rely on La. R.S. 15:301.1(A) to correct the error as a matter of law but should correct the sentence on its own authority under La. C.Cr.P. art. 882 to correct an illegal sentence at any time. *See State v. Payne*, 17-12 (La. App. 5 Cir. 5/17/17), 220 So.3d 882, 888. Therefore, we amend the enhanced sentence to delete the restriction on parole. *See State v. Simmons*, 17-385 (La. App. 5 Cir. 12/27/17), 237 So.3d 610, 613. We also order

the 24th Judicial District Court Clerk of Court to transmit notice of the amended sentence to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and to the Department of Corrections' legal department. *See State v. Thompson*, 18-273 (La. App. 5 Cir. 11/28/18), 259 So.3d 1257, 1273, *writ denied*, 18-2077 (La. 9/6/19), 278 So.3d 372.

Next, there is a discrepancy between the habitual offender sentencing minute entry, the UCO, and the transcript. The transcript reflects that Defendant's enhanced sentence was ordered to "run concurrent[sic] with the time he's doing now." The habitual offender sentencing minute entry and the habitual offender UCO do not indicate that Defendant's sentence is to run concurrently with the sentence he is currently serving. This Court has previously remanded a case for correction of the minute entry and the UCO in its error patent review under similar circumstances. *See State v. Lyons*, 13-564 (La. App. 5 Cir. 1/31/14), 134 So.3d 36, *writ denied sub nom. State ex rel. Lyons v. State*, 14-481 (La. 11/7/14), 152 So.3d 170 (citing *State v. Long*, 12-184, (La. App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142). Accordingly, to ensure accuracy in the record, we remand this matter and order the trial court to correct the minute entry and UCO to reflect that Defendant's sentence was to run concurrently with the sentence he is currently serving. We further order the Clerk of Court for the 24th Judicial District Court to transmit the corrected UCO to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and the Department of Corrections' legal department. *See Lyons*, *supra*; *State v. Maize*, 16-575 (La. App. 5 Cir. 6/15/17), 223 So.3d 633, 656, *writ denied*, 17-1265 (La. 4/27/18), 241 So.3d 306.

Additionally, there is another discrepancy between the habitual offender minute entry and transcript. The transcript indicates that there was a stipulation to the habitual offender bill, while the minute entry provides that "Defendant was found GUILTY under R.S. 15:529.1 as a 2nd Offender." The transcript prevails.

*State v. Lynch*, 441 So.2d 732, 734 (La. 1983).  This Court has previously remanded a case for correction of the minute entry to conform to the transcript for a similar issue.  *See State v. Ballew*, 11-401 (La. App. 5 Cir. 11/15/11), 78 So.3d 249, 255 (where this Court remanded the case for correction of the minute entry, which indicated the defendant pleaded guilty and that he was found guilty by the jury, but the transcript reflected only that the defendant was found guilty by a jury).  Accordingly, to ensure accuracy in the record, we remand the matter to the trial court and order it to correct the minute entry to conform to the transcript.  *Ballew*, *supra*.

## DECREE

For the foregoing reasons, we affirm Defendant's conviction.  We amend Defendant's enhanced sentence to delete the parole restriction and affirm his sentence, as amended.  We remand the matter to the trial court with instructions, as provided in this opinion.

**CONVICTION AFFIRMED;
ENHANCED SENTENCE AMENDED
AND AFFIRMED AS AMENDED;
REMANDED FOR CORRECTION OF
THE UNIFORM COMMITMENT ORDER;
REMANDED WITH FURTHER INSTRUCTIONS**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 18, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

## 24-KA-177

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
MONIQUE D. NOLAN (APPELLEE)     THOMAS J. BUTLER (APPELLEE)     HOLLI A. HERRLE-CASTILLO
(APPELLANT)

### MAILED

HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
MOLLY LOVE (APPELLEE)
ASSISTANT DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053